## West Side Hospital of Chicago v. Emil Eiger et al.

### Gen. No. 13,708.

1. PRINCIPAL AND AGENT—*when latter may bind former, though acting without authority.* If the principal by his conduct permits an agent to impose upon a third party, such third party may recover upon the basis of the apparent authority of the agent.

2. VERDICT—*when set aside on review.* A verdict clearly against the preponderance of the evidence will be set aside on review.

Assumpsit. Error to the Municipal Court of Chicago; the Hon. WILLIAM N. COTTRELL, Judge, presiding. Heard in this court at the October term, 1907. Reversed and judgment here. Opinion filed March 19, 1908.

FRANK F. TOLLKUEHN, for plaintiff in error.

ADLER & LEDERER, for defendants in error.

MR. JUSTICE ADAMS delivered the opinion of the court.

Plaintiff in error sued the defendants in error, Emil, Joseph and Oscar Eiger, doing business as E. Eiger & Bros., for hospital treatment and board. The cause was tried by the court, without a jury, and the court found the issues for the plaintiff and assessed the plaintiff's damages at the sum of $20 and costs, and rendered judgment accordingly, and the plaintiff, claiming that the sum assessed

as damages is less than it is entitled to, sued out this writ of error.

The only question to be decided is one of fact, viz.: whether or not the plaintiff is entitled to a larger sum as damages, and this depends on the evidence. Case number 13,709, E. L. Heintz v. Emil Eiger et al., *post*, p. 651, was consolidated with this case for hearing, and heard on the same abstracts and briefs. The evidence is substantially the same in the two cases, which will explain the otherwise apparent awkwardness of referring to evidence applying solely to the Heintz case. E. L. Heintz testified that he was a licensed practicing physician, and that, September 1, 1906, the telephone nurse at the West Side Hospital called up, by telephone, E. Eiger & Bros., and witness asked "Is this E. Eiger & Co.?" and was answered "Yes," and the witness said: "I have just examined a man who says he was hurt in your factory," when the person who answered said, "Wait a minute, you want Mr. E. Eiger," and witness held the wire a minute, when another voice said, "Hello," the witness asked, "Is this Mr. Eiger?" and he said yes, and witness said he was Dr. Heintz, at the West Side Hospital, and had just examined a Mr. Fishman, who said he was injured at Eigers' factory, when Eiger asked how badly Fishman was injured, and witness said that both his arms were badly crushed, and Eiger asked him how long he would have to be in the hospital, and witness said that he did not then know, that they would have to wait developments, and farther said, "Mr. Eiger, Mr. Fishman says that you will be responsible for the hospital bill and for my bill." Mr. Eiger said, "Yes, I will," and that witness then treated Fishman. The witness testified that he treated Fishman during September and October, and into November, and that the total charge for his services was $131, and that the same was the fair and reasonable value of his services.

Louise Howell testified that she was telephone nurse at the West Side Hospital, and September 1, 1906, Fishman came there with a fellow employee, and she, as is usual in such cases, called up E. Eiger & Bros. and asked to speak to E.

Eiger himself, and the person who answered the 'phone told her to hold the wire, when another voice answered, and she asked if it was Mr. E. Eiger, and was answered yes, and she told him of his employee being at the hospital and of Dr. Heintz attending him, and asked if he would be responsible for the hospital bill and Dr. Heintz's bill, and he said yes, to go ahead with the case, that they would be responsible for all the bills in connection with Fishman's illness. Witness further testified, that after she had the conversation above-mentioned she reported the conversation to Dr. Heintz, who subsequently requested her to call up E. Eiger & Bros. again, which she did, and said Dr. Heintz wants to speak to you.

Louise Swing, bookkeeper and clerk of plaintiff in error, testified that Fishman was at the hospital nine weeks and five days at $10 per week, and $2 for a gold plate, in all $99.50. Witness also identified a letter, which was put in evidence and is as follows:

"Chicago, Nov. 30, 1906.

West Side Hospital, City.

Gentlemen: Your bill for Mr. B. Fishman received, which we herewith return. When you called us up by telephone, you stated that will remain in hospital from one to two weeks, and that you would charge $10 per week, to which we agreed to pay, but we do not intend to pay you for the rest of the time he was there, as we did not authorize you to keep him as long as that.

Yours very truly,

E. EIGER & BROS."

(The foregoing is an exact copy of the letter.)

Witness testified that $23 had been tendered by the defendant on the hospital bill, and that sum was tendered in open court and deposited with the clerk. She further testified that one statement of the amount due the West Side Hospital was sent to the defendants October 31, 1906, in reference to which no answer was returned, and that another was sent November 19, 1906, and both statements were returned by defendants November 20, 1906.

Emil Eiger testified that he had no such conversation as was testified to by Dr. Heintz; that Emil Sellstrom, his book-keeper came to his office and told him that Fishman was at the hospital, and witness sent him back to the telephone to ask how long Fishman was going to stay there and Sellstrom so asked and returned to witness and said Fishman was going to stay there one week, and that the charge was $10 per week, and he authorized him to answer that they would pay $10. Witness admitted that he had received a statement showing Dr. Heintz's bill to be, he thought $130, and the hospital bill $99.50, and that he returned it with a statement that he would pay for two weeks. Emil Sellstrom testified that he had only one conversation with some person, at the West Side Hospital; that a lady called up and said Fishman was there, and asked if they would stand the expense, and he asked her to wait a moment and went to E. Eiger, who told him to find out the costs and the nature of the injury, and witness telephoned back and asked how long the man would be in the hospital, and she said "Wait a minute, I will ask the doctor," and that the gentleman came to the 'phone and witness asked him, and he said a week, and he said wait a minute, and witness spoke to Mr. Eiger again, and he said, "All right, if it is a week, say all right," and witness went back to the 'phone and said, "Yes, we will stand a week."

Doctor Heintz testified in rebuttal that he made no such answer as testified by Sellstrom, viz.: that it would require Fishman's staying in the hospital only a week; that his answer was that he did not know; that they would have to await developments in the case.

The evidence shows that Fishman was in the defendants' employ and was injured in their factory, and was taken to the hospital by another employee of defendants, who worked on the same floor with Fishman in the factory, and that this was in the daytime, when the workman would not be likely to leave the factory to take the injured man to the hospital without leave or direction from his employers. Sellstrom does not specifically deny the conversation testified to by Dr. Heintz, nor was he specifically asked whether he had such

conversation.   He merely denies it by implication, viz.: by stating the conversation which he had and testifying that it was the only conversation which he had with any one at the hospital.

The defendants do not stand on the agreement testified to by E. Eiger and Sellstrom, namely, that defendants were only to be responsible for the hospital bill for one week, at the rate of $10 per week.   In their letter of November 20, 1906, they say:   "You stated that, will remain in hospital from one to two weeks, and that you would charge $10 per week, to which we agreed to pay."   This is directly contrary to the evidence of E. Eiger and Sellstrom, that the communication on the telephone was that Fishman was to stay in the hospital only one week, and that the agreement was only for $10 for one week; add to which that the defendants tendered $20 and costs in open court, on the trial.   Dr. Heintz testified that he said to the person with whom he talked, by telephone, "Mr. Fishman says that you will be responsible for the hospital bill and for my bill."   The hospital not being a charitable institution, it is probable that if Fishman, a workman, who earned his daily bread by his daily labor, and, presumably, was not oversupplied with money, would have gone to the county hospital, if the expense of going to the hospital in question was to fall on him.

Fishman has not been produced as a witness, nor has his absence been accounted for.   We think the testimony of Dr. Heintz and Miss Louise Howell much more probable and credible than that of E. Eiger and Emil Sellstrom.   The doctor's evidence is to the effect that both of Fishman's fore arms were badly crushed.   That this was true is not denied, and, if true, it is much more probable that Dr. Heintz said over the telephone that he did not then know how long the patient would have to stay in the hospital; that he would have to await the developments of the case, than for him to say that he would have to stay a week.   The event proved that the doctor would have been greatly mistaken had he said only a week.

Emil Eiger has no personal knowledge of the communi-

cations from Doctor Heintz and Miss Louise Howell over the telephone, or of Sellstrom's communication to them. He merely knows what Sellstrom told him. This is clear from his testimony. Therefore there are two witnesses as to the telephone communications—Dr. Heintz and Miss Louise Howell—both of whom had personal knowledge, and who testified that it was stated by the person telephoning from defendants' office that the defendants would be responsible for the hospital bill and Dr. Heintz's bill, as against the testimony of Sellstrom, who, as before stated, denies their testimony only by implication. When Fishman was taken to the hospital, plaintiff and Dr. Heintz promptly inquired whether the defendants would be responsible for his hospital and physician's bills, and if they had been informed that defendants would only be responsible for the hospital bill for one week, it is so improbable as to verge on the impossible, that plaintiff thereafter would have furnished Fishman with board, lodging and hospital attendance for nearly ten weeks, and that Doctor Heintz would have attended and treated him professionally for that length of time, especially in the absence of evidence that either plaintiff's officers or Doctor Heintz became suddenly *non compos mentis.*

Emil Eiger, when informed by Sellstrom that he was wanted at the telephone, and what for, authorized Sellstrom to represent him and answer the question whether the defendants would be responsible for Fishman's hospital and physician's bills, and Sellstrom, as the preponderance of the evidence shows, answered that they would. The plaintiff and Dr. Heintz relied on this answer, and, in good faith, acted on it, and defendants are estopped to deny it. "If any innocent party is to suffer, it shall fall upon him who enables the supposed agent, under his authority, to impose on others. And it is upon this principle that the principal may frequently be bound to third persons for acts of the agent in violation of his express private instructions, although the agent himself would be liable to his principal for the breach." Doan v. Duncan, 17 Ill., 272, 275; Noble v. Nugent, 89 *ib.,* 522, 524.

The judgment will be reversed and judgment will be entered here in favor of plaintiff in error and against defendants in error for the sum of $99.50 and the costs of this court.

*Reversed and judgment here.*