GEORGE P. DOAN *et al.*, Appellants, *v.* SIDNEY S. DUNCAN, Appellee.

### APPEAL FROM MORGAN.

Power to act generally in a particular business, or a particular course of trade, will constitute a general agency; if this is so indicated, no matter what the private instructions of an agent may be.

The extent of the authority of an agent should not be confounded with the nature of the agency; but his action will bind his principal, in either case, within the general scope of the authority which the world has been permitted to suppose he possesses.

Doan et al. *v.* Duncan.

The authority of an agent may be shown by his acts about the business of his principal, while under direction, or by acquiescence in them when made known to the principal.

The previous course of dealing, by or through an agent, is proper evidence for the jury, as tending to show the existence of an agency and its extent.

This was an action of assumpsit brought by appellants against appellee, for goods sold, &c. Plea, general issue, trial by jury, verdict for appellee, and judgment for costs against appellants. Woodson, Judge, presided, at the trial in Morgan Circuit Court, at October term, 1855.

The following are the instructions, as given in the court below:

The plaintiffs asked the court for the following instruction:

"If the jury believe, from the evidence, that the defendant held Charles Clarkson out to the world, as his clerk and agent in buying and selling goods for the defendant, and was known as such agent by plaintiffs, and that the bill of goods sued for in this case was purchased by Clarkson, as such agent, on account of the defendant, then he is legally liable to pay the plaintiffs for the same, notwithstanding any private instructions of the defendant to Clarkson, or his appropriation of the goods to his own use." Which was modified by the court by inserting the words " and was known as such agent by the plaintiffs," to which modification, at the time, the plaintiffs, by their counsel, excepted ; and the instruction as modified was given to the jury, to which the plaintiffs, by their counsel, at the time excepted.

At the instance of the defendant, the court gave the jury the three following instructions :

1st. "That, although Clarkson may have been employed by Duncan, in the business house of Duncan in Waverly, and they should be satisfied, from the evidence, that he was Duncan's general agent in the management of that business, yet if they believe, from the evidence, that Clarkson went to the business house of the plaintiffs in St. Louis, and offered to buy, and did buy goods, on the credit and in the name of the defendant, under circumstances which would have put a prudent business man upon his inquiry as to Clarkson's authority, and no direct authority was produced to them from Duncan, and no such inquiry was made by plaintiffs, the defendant is not responsible for the goods so bought, unless it is proven by the plaintiffs that the goods were received and used by the defendant, or the transaction was approved and sanctioned by him; and they must find for the defendant."

2nd. " That they cannot find a verdict against the defendant, unless they believe from the evidence, that the defendant gave power and authority to Charles Clarkson, to take up the goods named in the account herein filed, and to have the same charged

18

to him, said defendant, and to pledge the name and credit of the said defendant for goods, and that these goods were, in pursuance of that authority, bought by said Clarkson for the said defendant, and that the name and credit of said defendant was thus, in pursuance of said authority, pledged for the same ; or unless they shall further believe, from the evidence, that Duncan held out Clarkson to the world as his general agent to buy goods for him, and as such agent had been in the habit of buying goods for Duncan from plaintiffs."

3rd. "That although they may believe, from the evidence, that Duncan had employed Clarkson as his clerk, at his store in Waverly, and had sometimes employed him as his agent to purchase for him, said Duncan, goods at St. Louis or elsewhere, yet if they also believe from the evidence, that Duncan never had authorized said Clarkson to purchase goods of said plaintiffs, or held out or represented that said Clarkson was his agent to purchase goods for him, Duncan, and the jury also believe from the evidence, that Clarkson bought said goods, in the name of Duncan, without Duncan's authority or knowledge, and that Duncan never did receive any part of said goods, then Duncan is not bound to pay for said goods, and the jury must find for the defendant, Duncan."

The jury returned a verdict for the defendant, and the plaintiffs, by their counsel, entered a motion to set aside the same and grant a new trial, because of wrong instructions given by the court to the jury, and because the verdict was against the law and evidence of the case ; which motion the court overruled.

D. A. SMITH, for Appellants.

M. McCONNEL, for Appellee.

SCATES, C. J. The only question is whether the law of agency has been correctly stated in the instructions. We think it has not. Agencies are classed into general and special. But the powers and the instructions under which the agent acts may be more or less restricted in the one case or the other. Power to act generally in a particular business, or a particular course of trade, in a business however limited, would constitute a general agency,—if the agent is so held out to the world, however so restricted his private instructions may be. Story on Agency, Secs. 126, 127, 131, 132, 133.

We should not confound the *extent* of the agent's *authority*, whether limited or unlimited, with the *nature* of the *agency*, whether general or special, (Sec. 133, note 1 to p. 154.) Either acting within the general scope of the authority held out

to the world by the principal will bind him. And this may be shown by the usual acts of such agent in his principal's business, or by his permitting and acquiescing in such acts when known to him, as well as by express authority and directions. The policy and reason of the rule, is for the protection of the innocent, who deal upon the faith of such authority as the principal holds out or permits as being authorized and sanctioned by him. If any innocent party is to suffer it shall fall upon him who enables the supposed agent under his authority, to impose on others. And it is upon this principle that the principal may frequently be bound to third persons for acts of the agent in violation of his express private instructions, although the agent himself would be liable to his principal for the breach.

Too much stress is laid upon the personal knowledge of plaintiffs as to the character and fact of agency, in the modification of plaintiffs' instruction and in the first instruction for defendant. They proceed upon the ground that defendant would not be liable for the acts of his general agent, unless the fact of the agency was personally known to plaintiffs, or they had demanded and the agent had produced satisfactory proof of his agency.

This does not accord with my understanding of the law of agency. The principal may, when discovered, be held responsible, although concealed by the agent, and he alone trusted. I presume the instructions were prepared and modified, with a view to deny the sufficiency of the acts in proof, to establish a general agency. But I presume the agency and defendant's liability must depend upon the facts, rather than plaintiffs' knowledge of these facts.

The second and third instructions for defendant are clearly wrong. The second would be understood as requiring an express authority to make this particular purchase, or that plaintiffs must show that the agent had been in the *habit* of buying of them for defendant. Much less proof than this instruction contemplates may fix a liability on one for the acts of another, as his agent. Few agencies could be established under the rule laid down in that instruction.

The employment of persons in acts of this kind, buying and selling, frequently constitutes the proof of the agency itself. The third instruction would destroy the force of such acts as evidence, and withdraw them from the jury. For although the agent was "*sometimes employed,*" as such, to buy "at St. Louis or elsewhere," yet if not held out to the world—and this is what is regarded and is evidence of a holding out to the world—or authorized to buy of plaintiffs, the jury are told not to regard the several purchases the agent was sometimes employed to make. Thus the acts, instances, facts, that are legitimate

evidence of a holding the party out to the world as a general agent are withdrawn as such, and no inference can be made from them. Stripped of these, and the remainder of the instruction requires direct authority to make this purchase. The previous course of dealing by or through the alleged agent, in St. Louis or elsewhere, was legitimate evidence tending to show an agency or not, and if one, its extent; and all such facts should have been left to the jury to draw their own inferences.

Judgment reversed and remanded for a new trial.

*Judgment reversed.*