EDNA SPARROW *et al.* Appellees, *vs.* CHARLES H. WILCOX *et al.*—(JENNIE E. COUNSELMAN *et al.* Appellants.)

*Opinion filed April 20, 1916.*

1. JUDGMENTS AND DECREES—*when section 30 of Conveyances act does not apply.* Section 30 of the Conveyances act, providing that deeds and mortgages shall take effect from and after filing the same for record, as to creditors and subsequent purchasers without notice, etc., has no application in determining whether a judgment creditor can enforce his lien against land subsequently acquired by the judgment debtor by fraudulently inducing the owners to execute a deed to him, but any rights which the judgment creditor may have in such case are those arising under section 1 of the act on judgments, decrees and executions.

2. SAME—*when judgment creditor cannot enforce his lien on after-acquired property.* While the lien of a judgment will attach to real estate subsequently acquired by the judgment debtor, yet if the deed to the real estate has been obtained by the judgment debtor by fraud and the grantors have been defrauded of their land, the judgment creditor is not entitled to enforce the lien of his judgment as against the right of the grantors to have the deed set aside for fraud, particularly where he has not, by reason of the deed, parted with anything or waived any of his rights.

3. SAME—*a conveyance in consideration of prior existing debt does not make the grantee a bona fide purchaser for value.* A conveyance of land in consideration of a prior existing debt does not make the purchaser a *bona fide* purchaser for value in the sense that he would be entitled to hold the land as against the true owners, who had been induced by the fraud of his grantor to execute a deed to the land.

APPEAL from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

SHERIFF, DENT, DOBYNS & FREEMAN, for appellants.

ROBERT F. KOLB, (ROBERT HUMPHREY, and GEORGE GILLETTE, of counsel,) for appellees.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Appellees, Edna Sparrow, Dorothy Riemenschneider and Viola Burke prior to December 23, 1913, were the owners of a lot on North Paulina street, in the city of Chicago. They were desirous of selling this lot, and Chester H. Burke, husband of Viola Burke, entered into negotiations with John H. Garrett, who, it appears, occupied the same offices with him, for a sale of the property. Through these negotiations a sale of the property was made by appellees to Garrett for the consideration of $7500. Garrett executed three notes for $2500 each, payable in one year, in payment for the property. He also transferred as collateral security for the three notes above mentioned, two notes for $3200 each, payable to himself and signed by Gustave Gunderson, and a mortgage executed by Gunderson on 320 acres of land in Meagher county, Montana. Garrett also delivered to Burke an abstract of title to the Montana land covered by the Gunderson mortgage, showing Gunderson to be the owner thereof subject to the mortgage from Gunderson to Garrett, and a written statement sworn to by him as to his financial worth, in which statement he listed his assets at $226,850 and his liabilities at $15,000 for money borrowed. Burke thereupon delivered to Garrett a deed to the Paulina street property from the said owners, which deed was dated December 23, 1913, was acknowledged December 29, 1913, and recorded the day following.

On May 22, 1913, appellants, Jennie E. Counselman, Charles L. Hutchinson, Seymour Morris, Edith Counselman and Charles Counselman, had recovered a judgment against Garrett for $7030.80 in the superior court of Cook county, upon which judgment an execution had been issued and re-

turned unsatisfied. On September 16, 1913, appellants obtained another judgment against Garrett in the municipal court of Chicago for $7428.54. An involuntary petition in bankruptcy had been filed in October, 1913, in the United States district court, against Garrett and one Bowers, as co-partners, owners of Rice Bros. Colossal Railroad Shows, and an order was entered on November 3, 1913, adjudicating such co-partners bankrupts. On September 23, 1914, an *alias* execution was issued on the judgment of May 22, 1913, obtained by appellants, which execution was levied upon the premises in question and a sale was made and a certificate of purchase issued to appellants October 20, 1914. Garrett had by his deed of April 3, 1914, conveyed the property in question to Charles H. Wilcox.

On July 20, 1914, appellees filed their bill of complaint against Charles H. Wilcox and others, including appellants, to set aside the deed made by appellees to Garrett and the deed from Garrett to Wilcox of the property in question on the ground of fraud and deceit and falsehoods and misrepresentations by Garrett as to his financial worth, setting up in said bill, among other things, that the notes and mortgages purporting to be signed by Gunderson were not his genuine notes and mortgages and that the abstract of title to the land covered by the mortgage was not genuine; that the appellees had relied on the representations made by Garrett as to his financial worth, which representations were wholly false and untrue and that the consideration for the deed of conveyance made by appellees had wholly failed. The bill further alleged that appellants and others claimed some interest in the premises as judgment creditors; that such interest, if any, was subordinate to the interest of the appellees, and prayed for a cancellation of the deed from appellees to Garrett and of the deed from Garrett to Wilcox. The latter and the Central Trust Company, as trustee in bankruptcy, which was also made a party defendant, filed answers to the bill calling for strict proof. Appellants also

filed their answer calling for strict proof as to the alleged misrepresentations and fraud of Garrett, and set up that the lien of their judgment against Garrett and the property in question was superior to the rights of the complainants.

Appellants, after a sale had been made on the levy under their *alias* execution issued on the judgment of May 22, 1913, as above set out, filed a cross-bill setting up the issuance of the sheriff's certificate of sale and asking that the same be declared valid and a bar to further proceedings by complainants under the original bill. Issues were joined upon the bill and cross-bill and the cause was referred to James V. O'Donnell, a master in chancery, who took the testimony of the respective parties and made his report, finding that the conveyance from appellees to Garrett was induced by fraud and that their deed to Garrett should be set aside, and also finding that Wilcox was not a *bona fide* purchaser for value; that the only consideration for the conveyance made by Garrett to Wilcox was a pre-existing debt; that the judgment liens of appellants should be set aside as far as said property was concerned, and that appellees should have the title to the property restored to them free from the liens of the judgments of appellants. Objections and exceptions were duly taken to the master's report and were respectively overruled, and a decree was entered by the chancellor setting aside and canceling the deed of appellees to Garrett and the deed from Garrett to Wilcox and restoring the fee title in the premises in controversy to appellees free from the lien of the judgments belonging to appellants. Appellants have appealed to this court from the decree and have assigned numerous causes for error. Wilcox and the Central Trust Company, defendants to the bill, the latter a trustee in bankruptcy, have not joined in the appeal. Garrett did not answer and was defaulted in the court below.

The principal grounds urged by appellants for reversal are: (1) Appellees, upon their own showing as disclosed

by the evidence in the record, are not entitled to set aside their deed to Garrett on the ground of misrepresentation and fraud; (2) appellants were judgment creditors of Garrett without notice, actual or constructive, of any claims of appellees, and their liens and the rights arising therefrom are superior to any alleged equities of appellees.

As to the first point, the master found that the transaction between Garrett and Burke was tainted with fraud on the part of Garrett; that the mortgage purporting to be executed by Gustave Gunderson and conveying the premises in Meagher county, Montana, securing the notes hereinbefore referred to, was never recorded in the office of the recorder of deeds of Meagher county; that from the circumstances surrounding the entire transaction it was a reasonable inference that no such person actually existed, and that said notes purporting to be signed by Gunderson were forgeries and worthless, and that the abstract tendered with the notes and mortgage to Burke by Garrett was also a forgery and worthless. The master further found that at the time of the negotiations between Burke and Garrett a sworn statement was made by Garrett and given to Burke, in and by which it was made to appear that Garrett was a man of great means and considerable financial responsibility, but it developed on the hearing that before this financial statement was rendered the firm with which Garrett was associated was adjudged a bankrupt in the bankruptcy court. The master found that said statement was wholly false and fraudulent, and that in the entire transaction the grossest, and almost criminal, fraud was perpetrated upon the complainants. There can be no doubt from the evidence that Garrett was insolvent at the time he gave the notes. An execution had been issued against him and returned "no property found," and a voluntary petition in bankruptcy had been filed against him and his co-partner and the firm had been adjudged bankrupt. It is also undisputed that the sworn financial statement he rendered was false, and from

an examination of the record we think the master was justified in finding that the notes and mortgage given as collateral were forgeries and of no value. While it is undoubtedly true that appellees or their agent, Burke, did not exercise a very high degree of care or the best of judgment in transferring the property in question and accepting the worthless notes of Garrett therefor, it is also true that in almost any case of fraud or deceit the person imposed upon could have saved himself from loss and imposition by a little foresight or the use of business sense. But on the whole record we are unable to say that the chancellor was wrong in his conclusions.

As to the second point, it is contended by appellants that under section 30 of the Conveyance act they are in the same position and are entitled to the same rights as *bona fide* purchasers of the property in question for value without notice, and that, even if the deeds can be canceled for fraud duly proven, they are still entitled to their rights as judgment creditors of record. Appellants rely on section 30 of the Conveyance act, which is as follows: "All deeds, mortgages and other instruments of writing which are authorized to be recorded, shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers, without notice; and all such deeds and title papers shall be adjudged void as to all such creditors and subsequent purchasers, without notice, until the same shall be filed for record."

While it is not claimed that appellants had either actual or constructive notice of any claims of appellees in the premises and there is no dispute as to the validity of the judgments obtained by appellants, we do not think that section 30 of the Conveyance act applies. If appellants had recovered a judgment against the appellees, which judgment was of record prior to the recording of the deed from appellees to Garrett, although the deed were of a prior date, they would be ·entitled to their judgment lien against the

property as against the grantee in the deed, and it is to cases of that kind that section 30 of the Conveyance act above set out refers, and such is the effect of the cases of *Massey* v. *Westcott,* 40 Ill. 160, *Columbus Buggy Co.* v. *Graves,* 108 id. 459, and other cases cited by counsel for appellants. As far as this case is concerned, any rights to which appellants are entitled have accrued under section 1 of the chapter on judgments and executions, which is as follows: "A judgment of a court of record shall be a lien on the real estate of the person against whom it is obtained situated within the county for which the court is held from the time the same is rendered or revived for the period of seven years and no longer," etc.

It is undoubtedly true that a judgment will attach to after-acquired real estate of a judgment debtor, but the question in this case is simply whether the judgment creditor in such case takes his judgment lien subject to existing equities against the judgment debtor or not. No decisions of this court have been cited in which the exact question involved has been passed upon, and no reason has been given, nor does any occur to us, why a judgment creditor under circumstances similar to those in the case at bar should be given any greater rights in the property of a judgment debtor than the judgment debtor himself has. If a proper case arose under which the grantor in a deed would be entitled to have the deed set aside as against the grantee and those claiming under him, it is difficult to understand why a judgment creditor having a judgment of record long prior to the date of the deed would have any greater rights in the premises than the judgment debtor himself or his grantees. The interest which the judgment creditor has in property subject to the judgment is by reason of the statute, and the judgment would have no greater effect than a prior conveyance made by said judgment debtor or a conveyance made as security for an antecedent debt. This is illustrated in the case at bar by the finding of the court be-

low as to Wilcox, who was not a *bona fide* purchaser for value but who took the property in satisfaction of a pre-existing debt.

The weight of authority seems to be that a conveyance in consideration of a prior existing indebtedness does not make the grantee a *bona fide* purchaser for value. In Pomeroy's Equity Jurisprudence (vol. 2, 3d ed. sec. 749,) it is said: "A conveyance of real or personal property as security for an antecedent debt does not, upon principle, render the transferee a *bona fide* purchaser, since the creditor parts with no value, surrenders no right and places himself in no worse legal position than before. The rule has been settled, therefore, in very many of the States, that such a transfer is not made upon a valuable consideration, within the meaning of the doctrine of *bona fide* purchaser."

In the case of *Powell* v. *Jeffries,* 4 Scam. 387, this court said, on page 390 of the opinion: "In order to constitute a *bona fide* purchaser he must part with something valuable at the time or in some way place himself in a worse condition than he was before. It is not sufficient if he took the property in consideration of a precedent debt."

In the case of *Metropolitan Bank* v. *Godfrey,* 23 Ill. 579, the court said, on page 606 of the opinion: "In the case of *Dickerson* v. *Tillinghast,* 4 Paige's Ch. 215, it was held to constitute a *bona fide* purchaser for a valuable consideration, within the meaning of the Recording act, he must, before he had notice of the prior equity of the holder of an unrecorded mortgage, have advanced a new consideration for the estate conveyed or have relinquished some security for a pre-existing debt due him. The mere receiving a conveyance in payment of a pre-existing debt is not sufficient. Therefore, where the owner of a lot of ground gave a mortgage on it to one who neglected to have his mortgage recorded, and afterwards, and before the mortgage was recorded, the mortgagor conveyed the premises to another, who had no notice of the mortgage, in payment of

a precedent debt, the court held this purchaser was not a ·bona fide purchaser for a valuable consideration within the meaning of the Recording act, so as to give him a preference over the prior unrecorded mortgage."

The case of *People's Savings Bank* v. *Bates,* 120 U. S. 556, was an action in replevin and involved the question of the priority of lien of two chattel mortgages made by Friedman Bros. & Co., one to Bates, Reed & Cooley, dated February 7, 1881, the other to the People's Savings Bank, dated February 11, 1881, but recorded prior to the chattel mortgage to Bates, Reed & Cooley, and also involved the construction of the Recording act of Michigan, which is similar to our own and reads as follows: "Every mortgage or conveyance intended to operate as a mortgage of goods and chattels which shall hereafter be made, which shall not be accompanied by an immediate delivery and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor and as against subsequent purchasers or mortgagees in good faith, unless the mortgage. or a true copy thereof shall be filed· in the office of the township clerk." The mortgage to the bank was to secure the pay-·ment of an antecedent debt, and the court, on page 567, said: "In *Johnson* v. *Peck,* 1 Woodb. & Min. 336, which was a case of a mortgage given to secure a pre-existing debt due from a mortgagor who had previously purchased the goods under such representations as entitled his vendor to use to recover them back, Mr. Justice Woodbury said: 'When rights of third persons intervene in this class of cases they are to be upheld if those persons purchased the property absolutely and parted with a new and valuable consideration for it without notice of any fraud. * * * But if they have notice of the fraud or give no new valuable consideration or are mere mortgagees, pawnees or as-.signees in trust for the debtor or for him and others, such third persons are to be regarded as holding the goods open

to the same equities and exceptions as to title as they were open to in the hands of the mortgagor, pawner or assignor.' * * * Without further discussion of the authorities cited by counsel, all of which have been carefully examined, we are of opinion that the claim of the bank to be subsequent mortgagee in good faith cannot be sustained, because the mortgage of February 11, 1881, although first filed, was not given in consideration of its having surrendered or agreed to surrender or to postpone the exercise of any substantial right it had against the mortgagors, but merely as collateral security for past indebtedness. Under such circumstances the mortgage which was prior in time confers a superior right."

Is there any real distinction between a conveyance because of an antecedent debt or the lien of a mortgage given to secure the payment of an antecedent debt which results from the act of the parties, and the lien of a judgment which is a lien because of the statute and which was rendered long prior to the conveyance to a fraudulent grantee who has defrauded the grantor and by his fraud deprived him of the real estate upon which the judgment lien is sought to be enforced? It is true that this court has held that a judgment creditor and a subsequent purchaser have the same equities with respect to unrecorded conveyances, but a prior and antecedent vendee or purchaser is not a subsequent *bona fide* purchaser for value, and it could not be consistently urged that a prior judgment creditor could acquire any greater rights with respect to future acquired property. A judgment creditor who goes to the trouble and expense of obtaining his judgment, in view of the condition of the record, is generally in a different position from one who obtains his judgment but seeks to make the same out of property subsequently acquired by the judgment debtor, in which case he has neither gained nor lost anything or been misled in any way, either in obtaining his judgment or by the action of the judgment debtor, hence he is not in the

272 — 41

position of a *bona. fide* purchaser for value. In this case the appellants have not, by reason of the conveyance, parted with anything or waived any rights or remedies, and are in no different position than they were before the conveyance by appellees was made to Garrett, induced by the fraud of the latter.

In the case of *Fosdick* v. *Schall,* 99 U. S. 235, (25 L. ed. 339,) which involved the construction of the Illinois statute regarding the recording of chattel mortgages as affecting the rights of antecedent creditors and leaseholders, the question was whether the mortgage, which by its terms included after-acquired property, was superior to vendors' liens on such after-acquired property. On that question the court said, on page 250 of the opinion: "As to the first question, it is contended that the mortgage created a subsisting and paramount lien on the cars as soon as they were put into the possession of the railroad company under the contract, and that the reservation of the title was void under the laws of Illinois because the contract was not recorded. It must be conceded that contracts like this are held by the courts of Illinois to be, in effect, so far as the Chattel Mortgage act of that State is concerned, the same as though a formal bill of sale had been executed and a mortgage given back to secure the price. We had occasion to consider that question in *Hervey* v. *Locomotive Works,* 93 U. S. 664, and there held, following the Illinois decisions, that if such an instrument was not recorded in accordance with the provisions of the Chattel Mortgage act, (Rev. Stat. Ill. 1874, 711, 712,) a lien like that of Schall would have no validity as against third persons. * * * As between the parties, notwithstanding the Illinois statute, the transaction is just what, on its face, it purports to be,— 'a conditional sale, with a right of rescission on the part of the vendor in case the purchaser shall fail in payment of his installments; a contract legal and valid as between the parties but made with the risk on the part of the vendor of

his losing his lien' if it works a legal wrong to third parties. (*Murch* v. *Wright,* 46 Ill. 488.) The question, then, is whether these mortgagees occupy the position of third parties, within the meaning of that term as used in this statute. They are in no sense purchasers of the cars. The mortgage attaches to the cars, if it attaches at all, because they are after-acquired property of the company; but as to that class of property it is well settled that the lien attaches subject to all the conditions with which it is incumbered when it comes into the hands of the mortgagor. The mortgagees take just such an interest in the property as the mortgagor acquired; no more, no less." To the same effect are *Myer* v. *Western Car Co.* 102 U. S. 1; 26 L. ed. 59; *Loomis* v. *Davenport and St. Paul Railroad Co.* 17 Fed. Rep. 301; *Harris* v. *Youngstown Bridge Co.* 90 id. 322.

Perceiving no error sufficient to justify a reversal the decree of the superior court will be affirmed.

*Decree affirmed.*