(No. 22786.—

ARMINDA E. MITCHELL *et al*. Appellees, *vs*. SHERMAN E. McEWEN ASSOCIATES, INC., *et al*.—(EDWIN L. BLOOM *et al*. Appellants.)

*Opinion filed April 17, 1935.*

HERRICK, J., dissenting.

VICTOR G. NARDI, for appellants Edwin L. Bloom *et al.;* O. L. PLUNKETT, for appellant Edward E. Core.

RAY E. WESNER, and WESNER & WESNER, for appellees.

Mr. JUSTICE ORR delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Crawford county canceling a deed because it was a cloud on the title of appellees to certain farm land.

280

Arminda E. Mitchell, one of the plaintiffs, in 1932 owned 278 acres of improved farm land in Crawford county. Sherman E. McEwen Associates, Inc., was an Illinois corporation having its main office in Chicago and was represented in different localities in Illinois by local agents. Defendant E. E. Core at this time was a banker in Robinson, the county seat of Crawford county, and the conservator of the estate of Ella Griswold. On December 1 of that year the plaintiff Mrs. Mitchell and McEwen, Inc., entered into a written agreement, whereby, in consideration of the payment by her of $6950, represented by the farm land in question, McEwen, Inc., agreed to pay her $417 per year interest for five years in monthly installments and the principal sum at any time after the five years, upon demand. To secure the payment of interest and principal, McEwen, Inc., assigned to Mrs. Mitchell a beneficial interest in a certain trust known as Chicago Title and Trust Company Trust No. 29040. She, with her husband, executed, acknowledged and delivered her warranty deed to the land to Core as the nominee of McEwen, Inc., to take the title. Some three weeks after the delivery of the deed, McEwen, Inc., instructed Core to transfer the title of the land to Lyle T. Laub, of McEwen, Inc. With the intent to do this Core did not make a deed from himself to Laub. Instead he took the deed from plaintiffs, which he still held unrecorded, and erased his name therefrom as grantee and inserted the name of Laub in lieu thereof. The instrument as changed was then placed on record by Core.

In January, 1933, Core, as conservator of the estate of Ella Griswold, petitioned the county court of Crawford county for an order authorizing him to loan to Laub and wife $2000 of the estate money on their promissory note, secured by a mortgage on the land in question. This was done and Laub returned to Chicago after obtaining the $2000. There he was pressed hard by defendants Bloom

and Buehler for the payment of debts which he owed them. Telling them he did not have the money to pay, Laub offered to put up the 278 acres of Crawford county land as security for the payment of his obligations within a stated period. An agreement was entered into between Laub on one part, and Bloom, his wife, Gladys, of the second part, Buehler of the third part, J. E. Stinson of the fourth part, and the Chicago Title and Trust Company, as trustee, of the fifth part. In it were set forth the following premises: A company known as the National Home Builders Corporation is indebted to Bloom on its note for $1500, which was paid by his becoming the owner of a one-third interest in another corporation known as the National Mastercraft Homes, Inc.; also the first company owed him $875 back salary; that the National Mastercraft Homes, Inc., is indebted to Bloom to the extent of $875 back salary, which last item the company and Laub dispute and contest; that Gladys V. Bloom holds the note of Laub and Stinson for $1575; that Buehler has coming to him back salary from the National Mastercraft Homes, Inc., which Laub desired to liquidate, together with what salary would be due Buehler up to January 7, 1933; that to do this, Laub and Stinson on November 26, 1932, gave Buehler their note for $600; that Buehler on November 16, 1932, delivered to Laub and Stinson certain stocks and bonds to be converted into cash, which represented a loan of $400 for sixty days; that Buehler worked for the National Mastercraft Homes, Inc., after January 7, 1933, to the date of this agreement, (March 14, 1933,) and claims $500 to be due him for that time, and this Laub and the company dispute and contest. In order to settle their differences and adjust accounts Bloom released his claims, including the one-third interest in the National Mastercraft Homes, Inc., and discharged his debtors and took Laub as debtor in place of them. Gladys V. Bloom released Laub and Stinson from their note and accepted Laub

as her sole debtor. Buehler released Laub and Stinson on the $600 note, his claim against the National Mastercraft Homes, Inc., for all salary, released Stinson and Laub for the money realized by them on the stock and bonds and accepted Laub in lieu of all others as a debtor. Laub, in consideration of those premises, agreed, on or before six months, to pay Bloom $3250, Gladys V. Bloom $1638 and Buehler $1500. The farm was deeded to the Chicago Title and Trust Company in trust, and the trust company conveyed it to the three defendants at the expiration of the six months, as Laub had not lived up to his obligations created by the agreement. Bloom and Buehler received a certificate from an abstract company in Robinson before the agreement was executed, which showed the fee simple title to the farm to be in Laub, subject to the $2000 Griswold mortgage.

Plaintiffs instituted this action when McEwen, Inc., defaulted and they became aware Laub had been substituted for Core in their deed. Cancellation of the deed is asked upon the grounds of fraud, forgery and violation of provisions in certain sections of the Illinois Security law (Blue Sky law). Defendant Bowman was a tenant on the farm. He was such when plaintiffs owned the land, and also under Core, to whom he attorned. Of the defendants, Bloom, Buehler, their wives, Core, individually and as conservator, and Ella Griswold by her guardian *ad litem,* appeared and defended. Defendants McEwen, Inc., Laub and his wife, the Chicago Title and Trust Company as trustee, and Bowman, did not make any defense and were all defaulted. Bloom, Buehler and Core defended upon the ground that plaintiffs could not and did not prove fraud, and that if the farm had been acquired by fraud and subsequently transferred into the hands of a *bona fide* purchaser for a valuable consideration, without notice, the remedy with respect to the recovery of the property by plaintiffs is gone and the court can do nothing. Denial

was also made of the forgery and violation of the Blue Sky act. Core, in addition to appealing with Bloom and Buehler, took a separate appeal, wherein he contends that the estate of a person under mental disability cannot be charged with notice of an outstanding equity against the real estate in which it obtains an interest by authority of court. The decree entered was based upon the findings that the deed from plaintiffs was procured through fraud, and the subsequent grantees and mortgagees were not innocent purchasers for value.

Under the charge of failure to prove fraud, defendants contend the court below committed error in allowing plaintiffs to testify concerning conversations had with different persons who were allegedly agents of McEwen, Inc., before the agencies of those persons were first established, and without also first fixing the times, places and parties present at the different conversations. This objection, if sustained, will remove from consideration testimony upon which the proof of fraud rests. Plaintiffs necessarily had to forego any proof of agency by the testimony of the officers of McEwen, Inc., or by the allowable evidence of agency coming from the alleged agents. This situation was created by the failure of McEwen, Inc., to defend and the unavailability of the alleged agents, (except Core,) who were then fugitives from justice. We have held in *Faber-Musser Co.* v. *Dee Clay Co.* 291 Ill. 240, that the declarations of the alleged agent are not competent to prove agency, although they are admissible against the principal to show the extent of the agent's authority. The agency may be established and its nature and extent shown by parol evidence, whether it be direct or circumstantial. If there be doubt about the extent of the agency and the authority of the agent to bind the principal, reference may be had to the situations of the parties and the property, acts of the parties, and other circumstances germane to

the question. In other cases it is held, where the evidence shows one acting for another under circumstances implying a knowledge on the part of the supposed principal of such acts, a *prima facie* case of agency is established. *Doan* v. *Duncan,* 17 Ill. 272; *Rockford, Rock Island and St. Louis Railroad Co.* v. *Wilcox,* 66 id. 417.

The objections of defendants to the introduction of testimony based upon the order of proof are without force. General rules of evidence should be applied in determining the fact of agency, but the order of this proof is within the discretion of the trial court. Where the power of the agent to make the particular contract is questioned, the proper course is to establish the fact of the agreement by showing its contents and the officiating parties. The next step is to show the authority of those who assumed to act. (*Erie and Pacific Despatch* v. *Cecil,* 112 Ill. 180.) The particular circumstances of this case call for the application of that principle. It was proper for the court to allow the agreement in evidence and then allow the proof of the circumstances upon which it was predicated to be shown. The alleged agents of McEwen, Inc., were McEwen, Dell, Core and Bess Broadstone. Without entering into a discussion of the evidence in detail, we find that the preponderance of the evidence clearly establishes the fact that those persons were the agents of McEwen, Inc., hence the finding of the court was not erroneous. These agents, over a course of months, importuned plaintiffs to enter into the agreement. The proof of the agencies and the proof of the fraudulent representations were properly made contemporaneously. Defendants have failed to point out in their briefs any harm or embarrassment because the different conversations could not be segregated into groups based upon a division as to the times, places, and in whose presence they were had. Although defendants could not produce the agents to refute the evidence of plaintiffs, this inability should not militate against the latter.

The reasons given above apply equally well to the objection made because plaintiffs were allowed to testify to conversations which took place prior to the execution of the agreement. Equally erroneous is the statement that Mrs. Mitchell was allowed to state that she "relied upon their statements," without naming definite statements and the parties who made them. The record shows that definite statements were coupled with designated agents of McEwen, Inc., and that these statements were false. The elements needed to be proved before a court of equity will decree a rescission of a contract on the ground of fraud are set forth in *Prentice* v. *Crane*, 234 Ill. 302. McEwen, Inc., acting through its agents, represented to plaintiffs that the property in which Mrs. Mitchell was to be given a beneficial interest as security for the payment of the interest and principal possessed a value more than sufficient to protect her. This representation was made as a statement of fact, with the purpose of inducing plaintiffs to complete the transaction. The statement was absolutely untrue, and the company and its agents knew it to be untrue when it was made. The evidence is conclusive that plaintiffs relied upon the truthfulness of this representation of the value of the security. That it was a material representation is unquestioned. That it turned plaintiffs from acts of hesitation to those of performance is evidenced by the execution of the agreement and the deed. The fraud was sufficient ground for canceling the deed.

Bloom and Buehler admit the existence of strong reasons against the legal title to the farm passing from Core to Laub, on the authority of *Standard Trust and Savings Bank* v. *Fernow*, 317 Ill. 325. To circumvent this barrier they advance the argument that Core was only the trustee and attempting in good faith to transfer the title to Laub according to instructions from McEwen, Inc., the *cestui que trust;* that the passing of the legal title was frustrated through ignorance of the law, and that at least the equitable

title passed to Laub and thence to them. As all the parties are now in a court of equity and Core has disclaimed all interest in the property, they contend that no reason exists against a finding that legal title reposed, along with the equitable title, in the two defendants and their wives.

The Blooms and Buehlers assert that if the deed of plaintiffs was procured by fraud they are protected in their estates by the equitable doctrine that a *bona fide* purchaser for a valuable consideration, without notice of prior equities, will prevail over prior equities. By taking this position these defendants contend against the applicability of the rule that a conveyance of real estate or personal property as security for an antecedent debt does not, upon principle, render the transferee a *bona fide* purchaser, since the creditor parts with no value, surrenders no right and places himself in no worse legal position than before. (*Sparrow* v. *Wilcox*, 272 Ill. 632.) The doctrine of *bona fide* purchaser is purely an equitable one and should not be extended farther than equitable principles warrant. It is a fundamental equitable conception that a subsequent holder for a valuable consideration without notice has no higher right than a prior holder equally innocent and with equal right of ownership. A title, because it is subsequent, is not the better one for that reason, alone. Where the prior legal owner is wholly innocent, has neither done nor omitted to do anything, it is inequitable to sustain the claims of a subsequent holder even though he be also a *bona fide* purchaser. (2 Pomeroy's Eq. Jur. (4th ed.) sec. 735.) The doctrine is not a rule of property or of title. It really assumes that the title of the purchaser is defective, and is a rule of inaction. Pomeroy, secs. 730, 743.

Defendants have not arrived at a proper understanding of the effects of their agreement with Laub. Under it Laub did not deed the farm in satisfaction of the determined claims. He only deeded it to a trustee, subject to a condition. If Laub did not pay the claims within six

months the creditors could demand the property from the trustee in satisfaction. The National Home Builders Corporation and the National Mastercraft Homes, Inc., were corporations. There is not a scintilla of evidence that authorized agents of the two corporations acted for the corporations in the forming of the agreement. The two corporations were not parties to the agreement, and there is a lack of evidence showing the authority of Laub or Stinson to act for either. The agreement recites that Gladys V. Bloom "waives, discharges and releases" Laub and Stinson on the $1575 note, and that Buehler "waived, discharges and releases" Stinson and Laub on the $600 note. Each then unequivocally took on Laub as debtor. A contradiction to the above intent to release and discharge then appears in the agreement, for it recites that the $1575 note and the $600 note are placed in the hands of the trustee, the Chicago Title and Trust Company, to be handled as follows: If Laub should complete the payment of the indebtedness within the prescribed time the two notes were then to be turned over to Laub; if Laub did not pay and the land was deeded by the trustee to the Blooms and Buehler under the agreement the two notes were to be delivered up to Laub, duly canceled. There is a total lack of proof that the two notes were canceled and delivered to Laub. The burden of proof was upon the Blooms and Buehler to establish that they were *bona fide* purchasers for value without notice. They have failed to prove the payment of a valuable consideration. The consideration paid must have actual value, capable of pecuniary measurement or actual change of the purchaser's legal position for the worse. (2 Pomeroy's Eq. Jur. (4th ed.) sec. 747.) What the agreement contains is the sole evidence on this point.

The claims against the corporations and Stinson were uncollectible. In other words, they were recognized to be worthless. Defendants believed something could be obtained from Laub after he told of owning the land. When

defendants released their debts against Stinson and the two corporations they gave up nothing of value. In addition, there is lack of evidence that defendants released all hold on Stinson, because it has not been shown that he was released unconditionally. His note is still with the trust company, so far as the record shows. Moreover, we can not presume from the context of the agreement that the $1575 note was not a joint one. What we have said in respect to this note is also applicable to the $600 note. *Sparrow* v. *Wilcox, supra,* is controlling.

Core, on his separate appeal, is not in an enviable position, for he appeared in a court of equity with unclean hands. He told the county court, when he petitioned for authority to loan Laub the $2000, that Laub held the title to the land. He willfully failed to tell the whole truth, knowing full well that the court would not authorize the loan if he disclosed that Laub held only as trustee. This constituted a fraud upon that court, and we will not approve such conduct by reversing the action of the court belowing in canceling the mortgage from Laub and wife to Core. The note given to Core by those two is still in existence. The transaction evidenced by the note does not concern us in this review except as it affects the title to the land in question. By canceling the deed and mortgage those purposes were accomplished.

The decree of the circuit court of Crawford county is affirmed.

*Decree affirmed.*

Mr. JUSTICE HERRICK, dissenting:

I concur in the majority opinion in so far as it affirms the setting aside of the mortgage to Core, but I dissent from the conclusion reached that the conveyance to the Chicago Title and Trust Company, and by it to the defendants Bloom, Buehler and Gladys V. Bloom, should likewise be vacated. The conveyance to these three defendants should be sustained as a mortgage on the premises to the amount of the respective claims of such three defendants.