(No. 64979.—

JEAN DEAL, Appellee, v. WILLIAM BYFORD *et al.*, Appellants.

*Opinion filed March 22, 1989.*

194

CALVO, J., took no part.

RYAN, J., joined by WARD, J., concurring in part and dissenting in part.

Theodore D. Voska, of Addison, for appellants.

Jan W. Poris, of Wheaton, for appellee.

JUSTICE MILLER delivered the opinion of the court:

The plaintiff, Jean Deal, brought this action in the circuit court of Du Page County to recover damages for personal injuries she sustained in an attack on her by defendant William Byford, an agent and employee of defendant SRP Associates. Following a jury trial, the circuit judge entered judgment on verdicts awarding the plaintiff $1,275 in compensatory damages and $25,000 in punitive damages. The appellate court affirmed the judgment of the circuit court in an unpublished order. (151 Ill. App. 3d 1161 (unpublished order under Supreme Court Rule 23).) We allowed the defendants' petition for leave to appeal (107 Ill. 2d R. 315(a)), which purported to present for review a question involving contributory willful and wanton misconduct, punitive damages, and comparative fault. The defendants' procedural defaults in the circuit court resulted in the waiver of the issue for purposes of review, however, and, without reaching the

merits of that contention, we now affirm the judgment of the appellate court.

The present appeal arises from an occurrence at an apartment complex in Addison on September 1, 1984. On that day defendant William Byford attempted to inspect the apartment being vacated by plaintiff Jean Deal and her family. An argument ensued, and Byford struck Mrs. Deal on her head and in her face, injuring her. On December 13, 1984, the plaintiff filed a five-count complaint against Byford and his employer, SRP Associates, owner of the apartment complex. Count I of the complaint was directed against Byford and alleged that he acted intentionally and willfully, and in the scope of his employment as an agent of SRP Associates, in striking the plaintiff. Counts II, III, and IV of the complaint were directed against SRP Associates. Count II sought recovery under a *respondeat superior* theory from SRP Associates as Byford's employer. Counts III and IV alleged that SRP was negligent in employing and retaining Byford as its manager and agent, and in failing to supervise and control him. A fifth count, brought by the plaintiff on behalf of her minor daughter, was dismissed by the plaintiff at the close of evidence at trial and is not involved in this appeal. Each count of the complaint requested both compensatory and punitive damages.

On January 8, 1985, William Byford was served with summons. After failing to obtain service of process on defendant SRP Associates and its managing partner, Masood Mazhar, the plaintiff served a second alias summons on May 10, 1985, on William Byford's wife, Terri, who was also alleged to be an agent and manager of SRP Associates.

On February 7, 1985, William Byford, acting "individually and as agent for SRP Associates," filed a verified answer to the plaintiff's complaint. The answer responded to all five counts of the complaint and admitted

that Byford was an agent of SRP Associates and that he was acting within the scope of his employment on the day of the altercation. Also on February 7, 1985, attorney Theodore Voska entered his appearance on behalf of both Byford and SRP Associates and filed a demand for a jury trial. Whether SRP authorized Voska's appearance on its behalf before it was served does not appear of record.

Trial commenced on February 19, 1986. The evidence presented at trial indicated that the plaintiff and her family, pursuant to an agreed order, were to vacate their apartment by August 31, 1984. The plaintiff testified that around 8:30 a.m. on September 1, 1984, Byford came to her door and told her that he had a court order for her eviction. The plaintiff said that she and Byford began arguing through the closed door. According to the plaintiff, Byford informed her of his intent to change the locks on the apartment door, and he then opened the door with a pass key; once the door was open, the plaintiff and Byford exchanged words and engaged in a shoving match. The plaintiff testified that she slapped Byford in the face while she was struggling with him for control of the door. According to the plaintiff, Byford then hit her in the head with an object and pushed her into the apartment, where he continued to strike her in the head and face with his fists. The police and paramedics were summoned. The plaintiff was treated at a local hospital for injuries to her head, eyes, nose, and face, and she was released from the hospital later that day.

William Byford testified that he worked as a handyman for Mazhar on a job-to-job basis and received an hourly wage in cash. Byford testified that on the morning in question he went to the plaintiff's apartment to inspect the premises. Byford explained that the plaintiff's family was moving out and that he was going to prepare the apartment for new tenants. Byford said that

the plaintiff initially refused to admit him into the apartment but that she later relented; Byford denied that he opened the door with a pass key. Byford testified that in the ensuing argument the plaintiff spat in his face, slapped him, and kicked him in the groin. Byford testified that he could not remember striking the plaintiff, but he insisted that any action he took was done in self-defense.

Byford also testified that he never held himself out as an agent of SRP Associates. He further claimed that although he had signed the answer to the plaintiff's complaint as an agent, he had not been aware of the significance of the documents. Byford additionally admitted that his wife, Terri, signed his name on occasion on landlord's five-day notices as an agent of SRP. Byford admitted to signing documents on behalf of SRP, but he insisted that he had never received authorization from SRP to act as its agent or manager.

Masood Mazhar, the managing partner of defendant SRP Associates, testified that at the time in question he employed Byford to paint apartments and to do other general maintenance work in the complex. Mazhar said that he also employed Byford's wife, Terri, to show apartments to prospective tenants, take complaints, and collect rent. Mazhar claimed that he never authorized Byford to sign anything as an agent or manager of SRP. In an attempt to rebut this, plaintiff's counsel produced a landlord's five-day notice bearing William Byford's signature as agent or attorney of SRP.

On the second day of trial, defense counsel made an oral motion to amend the pleadings on behalf of defendant SRP Associates. Counsel sought to deny the admissions made in the answer previously filed on behalf of both defendants regarding the existence of an agency relationship between Byford and SRP. The trial judge denied the motion as untimely. The trial judge noted that

defense counsel had filed a joint appearance on behalf of both Byford and SRP Associates and was representing both defendants at trial. The trial judge concluded that the answer constituted a judicial admission by SRP and that SRP therefore could not dispute the admission that Byford was its agent and was acting within the scope of his employment at the time of the occurrence here.

At the conclusion of the trial the jury returned a verdict in favor of the plaintiff and against both defendants. The jury assessed compensatory damages in the amount of $1,500, determined that the plaintiff's own conduct accounted for 15% of the parties' combined negligence and willful and wanton misconduct, and reduced the award of compensatory damages by that percentage, producing a net award of $1,275 in compensatory damages. The jury also awarded the plaintiff $25,000 in punitive damages. The trial judge entered judgment on the verdicts.

The defendants appealed, and the appellate court affirmed the circuit court's judgment. The appellate court refused to consider the defendants' argument that the plaintiff was barred from recovering punitive damages because she was guilty of contributory willful and wanton misconduct. Noting that the defendants had not objected to any of the jury instructions and verdict forms used at trial, the appellate court concluded that the defendants' failure to preserve a proper objection precluded them from raising the issue on appeal. Also, the appellate court rejected the defendants' joint argument that the amount of punitive damages awarded by the jury was excessive, as well as SRP's separate argument that an award of punitive damages against it was inappropriate because its liability in this case was only vicarious. Finally, the appellate court rejected defendant SRP's argument that the existence of an agency relationship involving Byford was a factual question that

should have been submitted to the jury. The appellate court, like the trial judge, believed that the defendants' joint answer operated as a judicial admission by SRP that codefendant Byford had acted as its agent.

The defendants renew here the contentions they raised in the appellate court. We first consider the argument of defendant SRP Associates that the question of an agency relationship between SRP and Byford was an issue of fact that should have been submitted to the jury for resolution. During the conference on jury instructions, defense counsel tendered instructions concerning the issue of agency. The trial judge refused the instructions, repeating his earlier ruling, in denying defense counsel's oral motion to amend SRP's answer, that SRP had admitted the existence of an agency relationship. SRP now contends that the question of agency should have been determined by the jury and that the trial judge erred in holding that the defendants' joint answer, which admitted agency, constituted a judicial admission by SRP. Because defendant SRP failed to properly raise the argument before this court, however, we decline to reach the merits of the issue.

SRP Associates did not raise the agency question in the defendants' joint petition for leave to appeal filed with this court; the issue was presented for the first time in the defendants' joint brief. Supreme Court Rule 315 requires that a petition for leave to appeal contain "a statement of the points relied upon for reversal of the judgment of the Appellate Court." (107 Ill. 2d R. 315(b)(3).) Issues not presented in the petition for leave to appeal are not properly before the court. (*Dineen v. City of Chicago* (1988), 125 Ill. 2d 248, 262-63.) Although it is within our discretion to address the merits of an issue not properly raised in an appellant's petition for leave to appeal (*Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 462; *Schatz v. Abbott Laboratories, Inc.*

(1972), 51 Ill. 2d 143, 145), we conclude that consideration of the issue would be inappropriate in this case. See generally *People v. Ward* (1986), 113 Ill. 2d 516; *People v. Anderson* (1986), 112 Ill. 2d 39.

Defense counsel, representing both Byford and SRP Associates, filed an answer signed and verified by defendant Byford admitting the existence of an agency relationship. Byford testified that although he had read and verified the answer admitting the existence of the agency relationship, he was unaware of the legal significance of the document at the time he signed it. SRP Associates, through its managing partner, Mazhar, denied authorizing counsel to file an answer on their behalf, although the same attorney who filed the answer was representing SRP at that time and continued to represent SRP and Byford throughout the trial and on appeal. Later during trial, counsel sought to amend the answer that he had filed on behalf of defendants Byford and SRP to deny the existence of an agency relationship. At that point, defense counsel was clearly acting under a conflict of interest by continuing to represent both defendants. The trial judge recognized the problem and alerted counsel to it, but counsel continued in his representation of the two parties.

Indeed, examination of the pleadings and transcripts in this case reveals a large number of legal and procedural errors committed throughout the course of the litigation. We note that during trial both counsel for the plaintiff and the defendants failed to object to evidentiary questions and to preserve legal issues now presented to us for review. We will not condone counsels' conduct and ignore procedural errors so that we might reach issues the parties have failed to properly preserve and now ask us to review. Accordingly, we decline to consider here the argument of defendant SRP Associates that the question of an agency relationship between By-

ford and SRP was a factual issue that should have been submitted to the jury for resolution.

The defendants also make several challenges to the $25,000 award of punitive damages in this case. The defendants first argue that the plaintiff herself was guilty of willful and wanton misconduct and that her contributory fault must preclude her from recovering any punitive damages. The basis for this argument appears to be the defendants' inference, drawn from the verdicts in the case, that the jury must have found that the plaintiff was guilty of willful and wanton misconduct. The defendants contend that contributory willful and wanton misconduct will bar a plaintiff from recovering punitive damages, and they conclude that the award of punitive damages to the plaintiff cannot stand.

At the conference on jury instructions, the plaintiff submitted several general instructions regarding comparative negligence. The defendants raised the issue of contributory willful and wanton conduct as a circumstance to be considered by the jury in assessing damages. As a result, the court, with the consent of both attorneys, modified the pattern jury instructions and verdict forms. As given, the instructions and verdict forms allowed the jury to reduce the award of compensatory damages by the proportion of the plaintiff's own negligence or willful and wanton conduct. The jurors were also told in the instructions on compensatory damages that the plaintiff's own negligence could not be used to reduce the amount of the defendants' willful and wanton misconduct. The instructions did not, however, bar the plaintiff from recovering an award of punitive damages if she was also found to be guilty of willful and wanton misconduct. The defendants made no objection to the instructions that were given.

To preserve an objection to a jury instruction a party must both specify the defect claimed and tender a cor-

rect instruction. (*Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 387; see 107 Ill. 2d R. 239(b) (regarding objections to court's instructions submitted by trial judge).) It is the responsibility of the party challenging a jury instruction to submit an instruction to the trial judge that states the law for which he argues on appeal. If the defendants believed that the jury instructions used in this case were incorrect, incomplete, or otherwise inadequate, it was their duty to object to the instructions and to offer their own remedial versions. (*Auton v. Logan Landfill, Inc.* (1984), 105 Ill. 2d 537, 549; see 107 Ill. 2d R. 366(b)(2)(i).) By the same token, the defendants cannot now complain that the jury's verdicts were inconsistent. (*Tweedy v. Wright Ford Sales, Inc.* (1976), 64 Ill. 2d 570, 575; *cf. Chalmers v. City of Chicago* (1982), 88 Ill. 2d 532 (jury's award of punitive damages stricken where jury finds in special interrogatory that defendant was not guilty of willful and wanton conduct).) By failing to object to the instructions given, and by failing to tender any instructions setting forth the argument they now make in this appeal, the defendants waived any objection to the plaintiff's recovery of punitive damages in the face of the jury's assessment of her own contributory fault.

The defendants next contend that the jury's award of $25,000 in punitive damages to the plaintiff is excessive. The defendants further believe that the appellate court incorrectly evaluated the propriety of the award.

Punitive damages are intended to punish the wrongdoer and to deter that party, and others, from committing similar acts in the future. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 186; *Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, 35.) Because of their penal nature, punitive damages are not favored in the law, and courts must be cautious in seeing that they are not improperly or unwisely awarded. (*Kelsay,* 74 Ill. 2d at 188;

*Eshelman v. Rawalt* (1921), 298 Ill. 192, 197.) A reviewing court will not disturb an award of punitive damages on grounds that the amount is excessive unless it is apparent that the award is the result of passion, partiality, or corruption. *Hough v. Mooningham* (1986), 139 Ill. App. 3d 1018.

Relevant circumstances in reviewing an award of punitive damages include the nature and enormity of the wrong, the financial status of the defendant, and the potential liability of the defendant. (*Hazelwood v. Illinois Central Gulf R.R.* (1983), 114 Ill. App. 3d 703, 712-13.) Those circumstances are not, however, exhaustive. It is vital that each case be carefully assessed in light of the specific facts involved, and the ultimate determination should be governed by the circumstances of each particular case. Moreover, the underlying purposes of an award of punitive damages must be satisfied.

We are not in a position to reassess the credibility of the witnesses who testified at trial. We find nothing to indicate that the jury's assessment of punitive damages in the amount of $25,000 was excessive. The award is certainly not so high that it indicates passion, partiality, or corruption on the part of the jury. There is no requirement that the amount of punitive damages imposed on a defendant bear any particular proportion to the size of the plaintiff's compensatory recovery. (*Smith v. Seiber* (1984), 127 Ill. App. 3d 950, 957-58.) The evidence presented at trial showed that defendant Byford attempted to force the plaintiff and her family to vacate the apartment through oral harassment and, ultimately, physical means. The plaintiff required medical treatment as a result of Byford's attack on her. Contrary to the defendants' assertion, the absence of any evidence regarding their financial status does not mean that the jury's award must be set aside. Evidence regarding the financial status of a defendant is simply one relevant consid-

eration to be weighed by the judge or jury in determining an appropriate award of punitive damages. The plaintiff was not required to present such evidence, and the defendants made no attempt to do so. The defendants cannot now complain of its absence. The award of $25,000 serves both functions of punitive damages by punishing the defendants for their conduct and by deterring them, and others, from similar conduct in the future in their dealings with tenants.

Relying on *Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, defendant SRP Associates makes the separate argument that an award of punitive damages against it was inappropriate in this case because its liability for Byford's conduct is only vicarious. In *Mattyasovszky* this court observed that the rationale underlying the imposition of punitive damages is sharply diminished when liability is imposed vicariously. (61 Ill. 2d at 36.) *Mattyasovszky* referred to section 217C of the Restatement (Second) of Agency (1957) as providing guidelines for imposition of punitive damages against a party who is only vicariously liable for the conduct of another. That section, in pertinent part, allows the imposition of punitive damages when "the agent was employed in a managerial capacity and was acting in the scope of employment." (Restatement (Second) of Agency §217C (1957).) It was on this basis that the appellate court affirmed the imposition of punitive damages against SRP.

In this case, defendant SRP has failed to preserve any challenge to the plaintiff's claim that defendant Byford was SRP's managerial agent. Each count of the complaint contained or incorporated allegations that, at the time in question, Byford "was the resident manager of [the apartment complex where the plaintiff resided] and was the agent for and employed by SRP Associates," and, further, that SRP "employed Defendant William Byford as the resident manager and agent for" the

apartment complex. In addition, count II of the complaint, directed against SRP, alleged that on the date of the occurrence "Defendant William Byford was employed by Defendant SRP Associates and was at all times acting within the scope of his employment and was acting on behalf and for the benefit of his employer." SRP and Byford admitted the truth of those allegations in their joint answer to the plaintiff's complaint. We conclude that SRP's admissions were sufficient, in this case, to satisfy the standard expressed in *Mattyasovszky* and the Restatement for the imposition of punitive damages against a principal when the agent is employed in a managerial capacity and is acting within the scope of his employment.

Finally, we note that in attempting to shift the judgment for punitive damages against SRP Associates and Byford jointly to Byford alone, defense counsel, who continues to represent both defendants here, may very well be acting under a conflict of interest in this court.

For the reasons stated, the judgment of the appellate court, affirming the judgment of the circuit court of Du Page County, is affirmed.

*Judgment affirmed.*

JUSTICE CALVO took no part in the consideration or decision of this case.

JUSTICE RYAN, concurring in part and dissenting in part:

There are several things about the majority opinion that cause me concern. It is not clear, from the record or the opinion, whether compensatory damages were assessed in favor of the plaintiff on the basis of Byford's negligence, or on the basis of his willful and wanton misconduct. If damages were assessed on the basis of willful and wanton misconduct, was the jury's 15% offset

against these damages, because of plaintiff's misconduct, a finding that the plaintiff was guilty of willful and wanton misconduct, or was it a finding that plaintiff was guilty only of negligence? If the plaintiff was guilty of contributory willful and wanton misconduct, the question arises as to whether any punitive damages can be assessed in her favor against either of the defendants. Since the majority opinion is based primarily on the pleadings and procedural default, and in view of the uncertainties contained in the record, the opinion should not be viewed as an affirmative holding on the above questions.

I also question the propriety of the holding of the trial court and of the appellate court that the answer filed on behalf of both defendants constitutes a judicial admission of agency. I address the reason for this concern later. However, since the opinion disposes of this question on the basis of procedural default, and since the evidence indicates that an agency did exist, I do not dissent from this holding of the opinion, but I again state that because of the nature of the determination of this question, the opinion should not be taken as precedent on this point.

I dissent from that part of the opinion that holds that punitive damages were properly assessed against defendant SRP Associates. The basis of this holding is that the answer, which was filed, admitted that Byford was an agent and was the manager for SRP Associates. The opinion notes that section 217C of the Restatement (Second) of Agency (1957) allows the imposition of punitive damages against the principal when "the agent was employed in a managerial capacity and was acting in the scope of employment." (Restatement (Second) of Agency §217C (1957).) The trial court and the appellate court held that the answer filed constituted a judicial admission that Byford was an agent acting in a managerial ca-

pacity. However, the answer that was filed was not filed by or signed by SRP Associates. It was filed by and signed by Byford, the alleged agent. Thus, the agency and the agent's role as a manager have been founded on an assertion of the agent. I indicated above that I do not object to the ultimate finding of agency, because there was evidence at the trial that indicated Byford was an agent. However, there was no evidence at the trial, and there is none in the record, that supports the conclusion that Byford had any managerial duties or authority. The conclusion that he was employed in a managerial capacity is based solely on the answer that was filed by Byford. Not only is there no evidence that Byford was employed in a managerial capacity, but there is in fact evidence that he was not so employed. Byford so testified, as did Mazhar, the managing partner of SRP. Furthermore, Byford testified that when he signed the answer to the plaintiff's complaint, he did not realize the import of the answer. There is also no evidence that Byford had any authority to sign the answer as an agent for SRP.

I do not think the plaintiff can establish Byford as the manager for SRP by the mere assertion of the alleged manager that he occupied that capacity any more than a plaintiff can prove agency by the assertion of the agent. An agent cannot confer power upon himself. See *Mitchell v. McEwen Associates, Inc.* (1935), 360 Ill. 278; *Merchants' National Bank v. Nichols & Shepard Co.* (1906), 223 Ill. 41; *Kapelski v. Alton & Southern R.R.* (1976), 36 Ill. App. 3d 37; 4 A. Wigmore, Evidence §1078, at 176 (Chadbourn rev. ed. 1972); McCormick on Evidence §267, at 642 (2d rev. ed. 1972).

Although Byford's answer may have constituted a judicial admission as to Byford, it is but a hearsay declaration as to SRP that has been contradicted by the only evidence on the question of whether Byford occupied a

managerial position. I therefore dissent from that part of the opinion which affirms assessment of punitive damages against SRP Associates.

JUSTICE WARD joins in this partial concurrence and partial dissent.