**SOUTHWEST WHEY, INC., Plaintiff,**

v.

**NUTRITION 101, INC., an Illinois corporation, Defendant.**

**No. 98–3217.**

United States District Court, C.D. Illinois, Springfield Division.

Feb. 19, 2002.

D. Bradley Blodgett, Hinshaw & Culbertson, Springfield, IL, Mark C. Metzger, Hinshaw & Culbertson, Lisle, IL, for plaintiff.

Thomas H. Wilson, David A. Rolf, Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., Springfield, IL, for defendant.

## OPINION

RICHARD MILLS, District Judge.

A postscript to the "Whey Saga."

The Motion for Remittitur is denied.

### BACKGROUND

On March 8, 2001, a jury entered a verdict finding both Defendant Nutrition 101 and Plaintiff Southwest Whey liable. The jury awarded Plaintiff, *inter alia*, a punitive damages award of $300,000. Defendant asserts that because its net worth is $217,628.30, a punitive damages award of $300,000 is excessive as a matter of Illinois law.

### ANALYSIS

A punitive damages award will not be overturned as being excessive unless it is "monstrously excessive, born of passion and prejudice, or not rationally connected to the evidence." *American Nat. Bank & Trust Co. of Chicago v. Regional Transp. Authority*, 125 F.3d 420, 437 (7th Cir.1997). "In reviewing an award of punitive damages, the role of the district court is to determine whether the jury's verdict is within the confines set by state law, and to determine, by reference to federal standards developed under Rule 59, whether a new trial or remittitur should be ordered." *Browning–Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 279, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989).

Illinois views punitive damages as a punishment. *Kochan v. Owens–Corning Fiberglass Corp.*, 242 Ill.App.3d 781, 797, 182 Ill.Dec. 814, 824, 610 N.E.2d 683, 693 (1993). "The nature of punitive damages in Illinois is clearly singular-it is punishment for the defendant." *Hazelwood v. Illinois Central Gulf R.R.*, 114 Ill.App.3d 703, 712, 71 Ill.Dec. 320, 328, 450 N.E.2d 1199, 1207 (4th Dist.1983). "That punishment is designed in turn to promote three purposes: (1) to act as retribution against the defendant; (2) to deter the defendant from committing similar wrongs in the future; and (3) to deter others from similar conduct." *Hazelwood*, 114 Ill.App.3d at 712, 71 Ill.Dec. at 328, 450 N.E.2d at 1207. Important considerations in reviewing a punitive damages award include "the nature and enormity of the wrong, the financial status of the defendant, and the potential liability of the defendant." *Deal v. Byford*, 127 Ill.2d 192, 204, 130 Ill.Dec. 200, 537 N.E.2d 267, 272 (1989). Those considerations are not exhaustive. The underlying purpose of such an award must be furthered. *Deal*, 127 Ill.2d at 204, 130 Ill.Dec. at 205, 537 N.E.2d at 272. Because the assessment of damages is primarily an issue of fact for the jurors who apply their combined wisdom and experience, deference must be given to the careful deliberative process of the jury. *See Barry v. Owens–Corning Fiberglas Corp.*, 282 Ill.App.3d 199, 207, 217 Ill.Dec. 823, 829, 668 N.E.2d 8, 14 (1st Dist.1996).

### I. *Nature and Enormity of the Wrong*

A court faced with a remittitur should first look to the nature and enormi-

ty of the wrong. *Deal,* 127 Ill.2d at 204, 130 Ill.Dec. at 205, 537 N.E.2d at 272. "While all acts which give rise to punitive damages are wilful and wanton, some of those acts are clearly more reprehensible than others. The egregiousness of the act should be reflected in the amount of the award. Recognizing that punitive damages are in the nature of a criminal sanction, we are simply saying that the punishment should fit the crime. An award which is disproportionate to the wrong serves none of the purposes of punitive damages and is excessive." *See Hazelwood,* 114 Ill.App.3d at 712–713, 71 Ill.Dec. at 328, 450 N.E.2d at 1207.

■ Here, Plaintiff and Defendant entered into a joint venture in which Plaintiff would procure whey from dairies and Defendant would market whey to hog farmers in the region east of the Mississippi River. The jury indicated on the verdict form that they found Defendant's president, Peter Ross, breached his fiduciary duty to the joint venture when he ceased his marketing efforts by the summer of 1992. Evidence was presented to the jury that once Peter Ross learned about the whey business from Plaintiff's president, Jack Muse, he turned his back on the joint venture and acted in a way that benefitted only himself. The Court sees nothing improper about the jury's punitive damages award in light of this evidence.

## II. *Financial Status of Defendant*

Defendant's motion focuses on the second prong of the punitive damages award analysis: the financial status of defendant. Defendant's sole argument is that the punitive damages award exceeds its net worth; therefore, the award is excessive and must be reduced. Its motion is rife with cases where courts have ordered remittiturs based on a defendant's net worth.

In its response, Plaintiff argues Defendant's net worth was not $217,628.30 as Defendant alleged, but that it was actually closer to $1 million and therefore, a punitive damages award of $300,000 was not excessive but well within the appropriate range. Plaintiff arrives at the $1 million figure by subtracting $431,886.81 (total liabilities) from $1,407,321.30 (total assets without depreciation).[1] Plaintiff also argues that goodwill should be added to Defendant's balance sheet which would increase Defendant's net worth above the $1 million mark.

■ The Court asked the parties to brief two Seventh Circuit cases that addressed arguments similar to those raised by Plaintiff. After reading these briefs, the Court concludes that the normal definition of net worth includes depreciation and excludes goodwill. *See Continental Web Press, Inc. v. National Labor Relations Board,* 767 F.2d 321, 323 (7th Cir.1985) (holding that the normal definition of net worth requires that depreciation be subtracted because that is consistent with generally accepted accounting principles); *Sanders v. Jackson,* 209 F.3d 998, 1002 (7th Cir.2000) (holding that because goodwill cannot be severed from the company, and thus is not readily available for the payment of judgments, it should not influence the calculation of net worth).

The Court finds Defendant's net worth is $217,628.30.

■ "Although an award so small that it would be only an ordinary item of expense does not serve the purposes of retribution and deterrence, an award which bankrupts the defendant is excessive. Punitive dam-

---

1. These figures are taken from Defendant's December 31, 2000 balance sheet. This information was provided to the jury at trial.

ages should be large enough to provide retribution and deterrence but should not be so large that the award destroys the defendant." *Hazelwood,* 114 Ill.App.3d at 713, 71 Ill.Dec. at 328, 450 N.E.2d at 1207.

■■■ Defendant's strongest argument is that a punitive damages award that exceeds its net worth will force it into bankruptcy. The Court does believe that is an issue here. The jury awarded damages on both sides of the aisle in this case. In *Southwest Whey, Inc. v. Nutrition 101, Inc.,* 155 F.Supp.2d 1003 (C.D.Ill.2001), the Court entered judgment on the jury's verdict and also divided assets of the joint venture. After the jury verdict and the Court's accounting, Defendant was entitled to $293,521.50 from Plaintiff and Plaintiff was entitled to $338,407.68 from Defendant. This results in a net gain by Plaintiff of $44,886.18. Defendant's net worth of $217,628.30 can adequately sustain a payment of $44,886.18; therefore, bankruptcy is not a concern in this case.

■■■ "Evidence regarding the financial status of a defendant is simply one relevant consideration to be weighed by the judge or jury in determining an appropriate award of punitive damages." *Deal,* 127 Ill.2d at 204–205, 130 Ill.Dec. at 205, 537 N.E.2d at 272. The jury was presented with Defendant's balance sheet detailing its assets and liabilities. The Court instructed the jury on this issue:

> If you determine an award of punitive damages is appropriate against either or both parties to this case, then in determining the amount of that punitive damages award, you may consider the parties' respective net worth. In considering the parties' respective net worth, however, you should not consider the amount of money that the party made from the sale of whey, its gross income, or its net income.

There is a presumption that juries understand and abide by the instructions they are given. *See United States v. Madoch,* 149 F.3d 596, 599 (7th Cir.1998). "When the jury has received proper instruction and otherwise has a reasonable basis for its award, a reviewing court will not disturb the verdict." *Lee v. Chicago Transit Authority,* 152 Ill.2d 432, 470, 178 Ill.Dec. 699, 716, 605 N.E.2d 493, 510 (1992). No one disputes the jury instruction given to the jury in this case was proper. The Court presumes the jury followed the Court's instructions, looked at Defendant's balance sheet, and determined that a $300,000 punitive damages award was the only way they could adequately punish Defendant's behavior.

### III. *Potential Liability of Defendant*

■■■ The third factor to consider is the potential liability of defendant. *Deal,* 127 Ill.2d at 205, 130 Ill.Dec. at 205, 537 N.E.2d at 272. "It seems appropriate to take into consideration both the punitive damages that have been awarded in prior suits and those that may be granted in the future." *Hazelwood,* 114 Ill.App.3d at 714, 71 Ill.Dec. at 328, 450 N.E.2d at 1207. There is no evidence that Defendant has any other related suits on the horizon. The third factor is not an issue in this case.

### *CONCLUSION*

There is no evidence that the jury's punitive damages award was the product "of passion and prejudice, or not rationally connected to the evidence." *See American Nat. Bank & Trust Co. of Chicago v. Regional Transp. Authority,* 125 F.3d 420, 437 (7th Cir.1997). The jury was presented with evidence of Defendant's actions and its net worth. Using that information, it decided to send a message that Defendant would not soon forget. Such is the purpose of a punitive damages award and this Court will not second-guess the jury's decision. In addition, because the bottom line in this case requires Defendant to pay

less than 20% of its net worth, the Court has no fear that such an award will bankrupt Defendant.

Lastly, after exhaustive research, this Court could find no case with a factual or procedural similarity to this cause of action. The standard or typical remittitur case simply does not apply. Therefore, Defendant's Motion for Remittitur is denied. *See Haluschak v. Dodge City of Wauwatosa, Inc.,* 909 F.2d 254, 256 (7th Cir.1990)(holding that district court has considerable discretion in deciding when punitive damages should be set aside).

*Ergo,* Defendant's Motion for a New Trial or Remittitur is DENIED. Because the Court determined that depreciation should be considered when determining net worth, Defendant's Motion to Strike Material Outside of the Record is ALLOWED.