**2022 IL 126666**


# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 126666)

FLETCHER McQUEEN, Appellant, v. LAVONTA M. GREEN *et al.*
(Pan-Oceanic Engineering Company, Inc., Appellee).


*Opinion filed April 21, 2022.*


JUSTICE THEIS delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Garman, Neville, Michael J. Burke, Overstreet, and Carter concurred in the judgment and opinion.


**OPINION**

¶ 1     At issue in this appeal is whether (1) an employer who admits liability under the doctrine of *respondeat superior* may be independently liable for its own negligence, even if the jury finds that its employee was not negligent, and (2) the appellate court erred in granting the employer's request for a new trial after determining that the jury rendered legally inconsistent findings. For the following

reasons, we reverse the appellate court's judgment.

¶ 2                                       BACKGROUND

¶ 3        Pan-Oceanic Engineering Company, Inc. (Pan-Oceanic), is a general contractor located in Chicago, Illinois. During the relevant period, Pan-Oceanic employed Lavonta M. Green. His responsibilities included hauling equipment that Pan-Oceanic would need for its construction jobs.

¶ 4        On August 17, 2012, Green's supervisor, Savinder Singh,[1] asked him to pick up a skid steer—a piece of equipment commonly used for digging—from Patten Industries, Inc. (Patten). The average skid steer weighs more than three tons. Upon Green's arrival, Patten employees loaded the skid steer onto a trailer. Green saw that the skid steer had not been loaded properly, and he asked for it to be reloaded. Patten employees refused. Green called Savinder to inform him that the skid steer had not been correctly loaded. He described it as "crooked." After speaking with a Patten employee, Savinder told Green to "be safe" and to return to Pan-Oceanic with the equipment.

¶ 5        At approximately 3 p.m., Green left with the skid steer and trailer and entered the Eisenhower expressway. Because traffic was heavy, Green initially was driving at a speed of 20 miles per hour. Traffic lightened as he approached the I-294 junction, and he accelerated to about 40 miles per hour. Green then looked in his rearview mirror and saw that the skid steer and trailer were bouncing. As he moved from one lane to another, Green stepped on the brakes, which caused his vehicle to start spinning. The trailer swung into a car driven by Fletcher McQueen and injured him.

¶ 6        McQueen filed a three-count complaint in the circuit court of Cook County, naming both Pan-Oceanic and Green as defendants. In count I, McQueen alleged, in part, that Green, as an employee of Pan-Oceanic, was negligent for operating his vehicle on the highway with an improperly situated skid steer. In count II, McQueen alleged that Pan-Oceanic was negligent for, among other things, failing to train

---

[1]Pan-Oceanic's president, Gulzar Singh, has the same surname. Therefore, we refer to them by their first names.

Green on how to respond to an unsafe load; ordering Green to take the load onto the highway when the company knew, or should have known, that the load was in an unsafe state; and failing to simply reject the load to prevent it from traveling on the highway. In count III, McQueen sought punitive damages from both Green and Pan-Oceanic. Regarding Pan-Oceanic, McQueen alleged, among other things, that the company demonstrated a reckless disregard for the safety of others by ordering Green to take the load on the highway when Pan-Oceanic knew, or should have known, that the load was in an unsafe state.

¶ 7        Pan-Oceanic acknowledged that Green was its agent for purposes of this case. The company further acknowledged that Green was acting within the scope of his agency at all relevant times.

¶ 8        In May 2017, the case was tried before a jury. Defendants moved to bifurcate the proceedings. In part, the trial court granted the motion. In the first proceeding, the jury would hear all evidence regarding defendants' conduct that could constitute reckless disregard for the safety of others. After the evidence was presented and after closing arguments, the jury would be given two special interrogatories to determine whether defendants' conduct amounted to willful and wanton misconduct.

¶ 9        If the jury decided that one or both defendants had acted with willful and wanton misconduct, or reckless disregard for the safety of others, plaintiff would be allowed to present evidence on punitive damages in a subsequent hearing. At that time, defendants' financial positions would be admissible.

¶ 10        During the first proceeding, Green testified that he called Savinder on the day of the accident because he was not sure whether the load was safe to transport. When Savinder and employees from Patten advised him that he could safely transport the skid steer and trailer, Green assumed that their assurances were correct. Green also testified that he felt he had to follow his supervisor's instructions because otherwise he might get fired. According to Green, no one at Pan-Oceanic had trained him how to respond if a skid steer was not loaded properly.

¶ 11        Pan-Oceanic's president, Gulzar Singh, explained that the company, in part, specialized in street and road construction. He testified that Pan-Oceanic held regular meetings at which safety rules were discussed. Gulzar also testified that, in

general, he relied on the company's supervisors to make daily decisions, particularly as it related to safety.

¶ 12        Gulzar testified that if Green had called his supervisor with a question about the safety of a load, the supervisor should have ensured that he understood the problem and how to fix the load. He further testified that Green was not the final decisionmaker as to whether he would drive with a load. According to Gulzar, Green was required to follow protocol that included calling his supervisor. Gulzar also acknowledged that, if any of Pan-Oceanic's employees had not been told that they could lose control of an unstable load, that would be a reckless disregard of safety rules.

¶ 13        Savinder testified that Green did not say that the load was unsafe when he called him on the day of the accident. Instead, Green told him that the load looked crooked or "funny." Savinder did not ask what Green meant, nor did he understand the scope of the problem. According to Savinder, he "was doing a few other things at the time." Savinder testified that he told Green to "let Patten take care of it."

¶ 14        On May 9, 2017, the jury instructions conference was conducted. Among the instructions that plaintiff tendered was Illinois Pattern Jury Instruction, Civil, No. 50.01 (approved Dec. 8, 2011) (hereinafter IPI Civil No. 50.01), which applies when both a principal and an agent are sued and no issue as to agency exists. It reads:

> "The defendants are sued as principal and agent. The defendant [principal's name] is the principal and the defendant [agent's name] is [his] [its] agent. If you find that the defendant [agent's name] is liable, then you must find that the defendant [principal's name] is also liable. However, if you find that [agent's name] is not liable, then you must find that [principal's name] is not liable." *Id.*

¶ 15        The notes on use for IPI Civil No. 50.01 add that,

> "[i]f by the pleadings and evidence there is an issue of fact as to the liability of the principal for his own acts independent of acts of the agent, then a separate instruction appropriate to such independent basis of liability should also be used and the last sentence of this instruction should be modified or stricken accordingly."

Defendants initially questioned whether IPI Civil No. 50.02 instead applied, but they ultimately acknowledged that IPI Civil No. 50.01 was appropriate.

¶ 16    Later in the conference, the parties realized that defendants had also included IPI Civil No. 50.01 in their proposed instructions. The trial court observed that defendants did not dispute that Green was Pan-Oceanic's agent. Therefore, if the jury ruled against Green, it had to rule against Pan-Oceanic as well. Yet, the court also noted that plaintiff had raised allegations against Pan-Oceanic that did not rest on *respondeat superior*, or vicarious liability, making it possible for the jury to rule against Pan-Oceanic based on its own negligence. The court reserved its decision on defendants' jury instruction but stated that the parties were free to bring alternative instructions.

¶ 17    Separately, as the parties discussed the verdict forms, defendants insisted that, because plaintiff had sued Green both individually and as an agent of Pan-Oceanic, each defendant should have its own verdict form. The trial court stated that, because Green was Pan-Oceanic's agent, there was "no conceivable way" that the jury could find against Green but not the company. The court then noted that plaintiff presented a failure to train theory against the company and, thus, it was possible for the jury to find against Pan-Oceanic but not Green. At the same time, the court suggested that "they rise and fall together because you've admitted that he's your agent."

¶ 18    When the court and the parties again discussed the verdict forms the next day, defendants stated, "I thought we had an instruction that any negligence of Pan-Oceanic is negligence against *** Green and vice versa." The trial court clarified that, because Green was the company's agent, his negligence could be attributed to Pan-Oceanic; however, the court noted that there were allegations against Pan-Oceanic that were not based on Green's conduct. Nonetheless, the court stated that there was no conceivable way the jury could find for Green, and against Pan-Oceanic, because the company had admitted agency.

¶ 19    On May 10, 2017, the parties gave closing arguments. After the trial court dismissed the jury, the court and the parties reviewed the jury instructions to confirm that nothing was missing. Referencing IPI Civil No. 50.01, the court stated that defendants were sued as principal and agent. Consequently, if Green was found liable, the jury also had to find Pan-Oceanic liable. The court did not mention the

last sentence of the instruction. Pan-Oceanic did not object to the omission of that sentence.

¶ 20    The next day, the trial court gave the jury its instructions. In part, the court instructed the jury that the word negligence meant "the failure to do something which a reasonably careful person would do, or the doing of something which a reasonably careful person would not, under circumstances similar to those shown by the evidence." Consistent with its proposal from the previous day, the court also instructed the jury that, "defendants are sued as principal and agent. The defendant Pan-Oceanic Engineering Co. Inc. is the principal and the defendant Lavonta Green is its agent. If you find that the defendant Lavonta Green is liable, then you must find that the defendant Pan-Oceanic Engineering Co. Inc. is also liable." The court further instructed that the expression "willful and wanton conduct" meant "a course of action which shows an utter indifference to or conscious disregard for the safety of others."

¶ 21    The trial court instructed the jury that plaintiff claimed that he was injured and sustained damages and that defendant Green was negligent by, among other things, "fail[ing] to acknowledge and/or understand the risks associated with hauling an improperly situated trailer on the rear of the skid-steer he was operating." The court instructed the jury that plaintiff claimed defendant Pan-Oceanic was negligent in, among other respects, "[o]rder[ing] and/or permit[ting] *** Green to take the load on the highway after Pan Oceanic [Engineering Company, Inc.,] knew or should have known that it was in an unsafe state" and "[f]ail[ing] to reject the load and [to] prevent it from leaving Patten Industries."

¶ 22    At the close of the first proceeding, the jury found for plaintiff and against Pan-Oceanic, but not against Green. The jury assessed damages in the amount of $163,227.45. In response to the first special interrogatory, the jury determined that Green had not acted with reckless disregard for the safety of others. In response to the second special interrogatory, the jury found that Pan-Oceanic had acted with reckless disregard for the safety of others.

¶ 23    In the second phase, Gulzar testified that Pan-Oceanic had retained earnings of more than $2 million for each of the three years before trial. At the close of the second proceeding, the jury awarded $1 million in punitive damages. On May 12, 2017, the trial court entered judgment on the verdicts.

¶ 24     Pan-Oceanic filed a posttrial motion, asking the trial court to enter judgment notwithstanding the verdict or to grant a new trial. Citing *Gant v. L.U. Transport, Inc.*, 331 Ill. App. 3d 924 (2002), Pan-Oceanic argued that, as a matter of law, it could not be liable under theories of negligent training, supervision, or entrustment because the jury rendered a verdict in Green's favor. Pan-Oceanic further contended that the jury's verdicts, in favor of Green and against Pan-Oceanic, and its answer to the second special interrogatory—finding that Pan-Oceanic had acted with reckless disregard for the safety of others—were legally inconsistent and against the manifest weight of the evidence.

¶ 25     Pan-Oceanic asserted that, "through the apparent unintentional oversight of both parties and the court," the jury was never instructed as to which party had the burden of proof and what they had the burden of proving as to any of the counts. Pan-Oceanic then argued that plaintiff's failure to tender an issues instruction on what specific acts constituted willful and wanton misconduct meant that he had forfeited any claim for punitive damages. Pan-Oceanic also claimed that the trial court erred in striking the second sentence of IPI Civil No. 50.01.

¶ 26     In response, plaintiff argued that, regardless of the jury's verdict in favor of Green, the evidence supported the verdict against Pan-Oceanic for its independent willful and wanton misconduct. Plaintiff emphasized that the case went to the jury on two distinct theories, one being that Pan-Oceanic failed to train Green how to properly load a truck and then ordered Green to drive the truck despite knowing that the load was unsafe. That theory was based on the conduct of Pan-Oceanic, not Green. Plaintiff distinguished *Gant* on the ground that the claims against Pan-Oceanic were not derivative of, or dependent on, Green's fault. Further, noting that it was not the trial court's duty to prepare the jury instructions, plaintiff argued that Pan-Oceanic had waived or forfeited any error based on the lack of instructions.

¶ 27     Additionally, plaintiff observed that the court gave the general burden of proof instruction and an issues instruction before the jury's first deliberation. Plaintiff noted that Pan-Oceanic did not object to proceeding at the second phase without a burden of proof instruction on specific issues. Because Pan-Oceanic "acquiesced in the entire instructional process," plaintiff argued that the plain error doctrine should not be used to grant it relief. As to IPI Civil No. 50.01, plaintiff noted that the

comments specify that the last sentence may be stricken where, as here, the plaintiff makes an independent charge of negligence against the employer.

¶ 28       The trial court denied Pan-Oceanic's posttrial motion. The court determined that, unlike in *Gant*, the allegations of negligence and willful and wanton conduct against Pan-Oceanic focused on fault attributable to the employer for its own conduct, rather than a derivative claim. The evidence established that, although Pan-Oceanic knew that the skid steer's placement on the trailer was "crooked," the company nonetheless instructed Green to proceed with the load. The evidence also showed that the company had not properly trained Green. Thus, the court found that ample evidence supported the jury's verdict. The court also noted that Pan-Oceanic failed to tender an issues instruction for plaintiff's claim for punitive damages and, thus, forfeited the issue.

¶ 29       On appeal, the court held that, when a plaintiff is injured by a company's employee in a motor vehicle accident, the plaintiff cannot maintain a claim for direct negligence against the employer where the employer admits responsibility for the employee's conduct under *respondeat superior*. 2020 IL App (1st) 190202, ¶ 42. The court reasoned that, once an employer admits responsibility for its employee's negligence, any liability alleged under an alternative theory, such as negligent hiring, becomes irrelevant and should be dismissed. *Id.* Asserting that other jurisdictions "take the same approach as Illinois, disallowing direct negligence claims against the employer where the employer admits liability under *respondeat superior*," the appellate court "decline[d] to treat negligent training differently from the other negligence claims that are barred once an employer admits liability under *respondeat superior*." *Id.* ¶ 44. The appellate court also concluded that the jury's findings—that Green was not negligent but Pan-Oceanic acted with an aggravated form of negligence—were legally inconsistent, and thus, the appellate court ruled that the trial court should have granted Pan-Oceanic's motion for a new trial. *Id.* ¶ 56.

¶ 30       Although the appellate court concluded that the legally inconsistent verdicts alone warranted a new trial, it found that the state of the jury instructions "compel[led] additional comment." *Id.* ¶ 65. The appellate court acknowledged that after the trial court reserved ruling on the burden of proof instruction that Pan-Oceanic tendered, the company neither reasserted the need for a burden of proof

instruction nor tendered the specific instruction that it argued was proper on appeal. *Id.* ¶ 59. And though on appeal Pan-Oceanic argued that the trial court should have given an issues instruction for willful and wanton conduct, it did not raise the issue until its posttrial motion. *Id.* ¶ 62. Nonetheless, based on the totality of the errors it found, the appellate court concluded that Pan-Oceanic had not received a fair trial. *Id.* ¶ 65.

¶ 31    Justice Mikva dissented. She wrote that this court has never endorsed the holding in *Gant*. *Id.* ¶ 71 (Mikva, J., dissenting). And to the extent that the majority properly relied on *Gant*, she found that it had "unnecessarily and unfairly extend[ed] application of the rule in that case beyond its principled parameters." *Id.* Justice Mikva observed that, in this case, there were bases of liability that rested entirely on Pan-Oceanic's own negligence and were not dependent on finding Green negligent. *Id.* ¶ 72. Thus, she saw no inconsistency between the jury's finding that Pan-Oceanic acted willfully and wantonly and its finding that Green was not negligent. *Id.* She also noted that Pan-Oceanic failed to object or tender alternative instructions for the instructions it challenged on appeal, thereby forfeiting any such challenges. *Id.* ¶ 74.

¶ 32    This court allowed plaintiff's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2020). We also allowed the Illinois Trial Lawyers Association and the Illinois Defense Counsel to file *amicus curiae* briefs. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 33                                                    ANALYSIS

¶ 34    The primary issue in this appeal is whether an employer's admission of vicarious liability for its employee's misconduct precludes a plaintiff from raising claims of direct negligence based on the employer's own conduct. The appellate court concluded that it does and, on that basis, ruled that the verdicts were legally inconsistent. Whether two verdicts are legally inconsistent is a question of law that this court reviews *de novo*. *Redmond v. Socha*, 216 Ill. 2d 622, 642 (2005).

¶ 35    A related issue is whether the trial court erred in striking the last sentence from IPI Civil No. 50.01, which would have instructed the jury that, if it found Green not liable, it must also find Pan-Oceanic not liable. Whether a jury instruction

accurately conveyed the law is also a question of law, which we review *de novo*. *Studt v. Sherman Health Systems*, 2011 IL 108182, ¶ 13.

¶ 36                    Vicarious Liability Versus Direct Liability

¶ 37        At common law, an employee's misconduct generally creates liability for his employer in two ways: vicarious liability for the acts of the employee or direct liability for the employer's own acts. *Vancura v. Katris*, 238 Ill. 2d 352, 375 (2010). Under the theory of *respondeat superior*, or vicarious liability, an employer may be liable for his employee's torts when those torts were committed within the scope of the employment. *Adames v. Sheahan*, 233 Ill. 2d 276, 298 (2009). By contrast, under a theory of direct negligence, the plaintiff alleges that the employer was itself negligent. *Vancura*, 238 Ill. 2d at 375. In a direct negligence claim, the plaintiff must prove that the employer's breach of duty, rather than that of the employee, was a proximate cause of the plaintiff's injury. *Id.*

¶ 38        Courts nationwide are split on whether an employer's acknowledgment of vicarious liability for its employee's conduct precludes a plaintiff from raising a cause of action for direct negligence against the employer. The appellate court in *Gant* relied on *McHaffie v. Bunch*, 891 S.W.2d 822 (Mo. 1995) (*en banc*), the most frequently cited decision holding that direct negligence claims are barred under these circumstances. In *McHaffie*, as relevant here, the plaintiff claimed that the defendant-employee negligently drove his employer's truck and that the defendant-employer was vicariously liable for the employee's negligence. The plaintiff also claimed that the employer had negligently hired and supervised the employee. On appeal from the jury's verdict in favor of the plaintiff, the appellate court concluded that the claim for negligent hiring against the employer had been improvidently submitted to the jury. *Id.* at 824.

¶ 39        The Supreme Court of Missouri affirmed, ruling that, "once an employer has admitted *respondeat superior* liability for a driver's negligence, it is improper to allow a plaintiff to proceed against the employer on any other theory of imputed liability." *Id.* at 826. The court reasoned that "[i]f all of the theories for attaching liability to one person for the negligence of another were recognized and all pleaded in one case where the imputation of negligence is admitted, the evidence laboriously submitted to establish other theories serves no real purpose." *Id.* The

court also expressed concern that irrelevant and potentially inflammatory evidence would be admitted into the record. *Id.*

¶ 40    Relying upon *McHaffie*, courts elsewhere have held that "where an employer acknowledges vicarious liability for its employee's negligence, a plaintiff's direct negligence claims against the employer are barred." *Ferrer v. Okbamicael*, 2017 CO 14M, ¶ 58 (superseded by statute (see *Brown v. Long Romero*, 2021 CO 67)); see also *Gant*, 331 Ill. App. 3d at 929 (holding that claims like negligent entrustment "are simply alternative theories by which to impute an employee's negligence to an employer" and, thus, "[o]nce the principal has admitted its liability under a *respondeat superior* theory *** the cause of action for negligent entrustment is duplicative and unnecessary").

¶ 41    Although some courts have suggested that *McHaffie* represents the majority view, the caselaw throughout the country is more evenly divided. See *MV Transportation, Inc. v. Allgeier*, 433 S.W.3d 324, 334 (Ky. 2014) (noting that the "authorities are split on whether a separate negligent hiring claim should go forward when an employer concedes its liability for the negligent acts of its employee under the doctrine of *respondeat superior*"). Indeed, several courts have rejected *McHaffie* and recognize a plaintiff's ability to plead direct and vicarious negligence claims in the alternative. See, *e.g.*, *Ramon v. Nebo School District*, 2021 UT 30, ¶ 17, 493 P.3d 613 (holding that direct negligence and vicarious liability claims are not redundant and that a plaintiff may proceed separately on both claims); *Allgeier*, 433 S.W.3d at 337 (holding that "a plaintiff may assert and pursue in the same action a claim against an employer based under *respondeat superior* upon the agent's negligence, and a separate claim based upon the employer's own direct negligence in hiring, retention, supervision, or training"); *James v. Kelly Trucking Co.*, 661 S.E.2d 329, 332 (S.C. 2008) (holding that a plaintiff may bring a direct action against the employer for negligence in hiring, supervising, or training the employee despite the employer's admission of vicarious liability).

¶ 42    Recently, after the Supreme Court of Colorado adopted the *McHaffie* rule in *Ferrer*, the Colorado General Assembly revised a statute to "reverse the holding *** that an employer's admission of vicarious liability for any negligence of its employees bars a plaintiff's direct negligence claims against the employer." (Internal quotation marks omitted.) *Brown*, 2021 CO 67, ¶ 4 n.2. "In abrogating

*Ferrer*, the General Assembly repealed the *McHaffie* Rule and allowed plaintiffs to simultaneously assert vicarious liability and direct negligence claims against an employer." *Id.*

¶ 43 This court aligns itself with those jurisdictions that reject the *McHaffie* rule. Settled law allows a plaintiff to plead and prove multiple causes of action. See *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 486 (1998); see also *Heastie v. Roberts*, 226 Ill. 2d 515, 557-58 (2007) ("Illinois law unquestionably allows litigants to plead alternative grounds for recovery *** as long as the alternative factual statements are made in good faith ***."); *Gehrett v. Chrysler Corp.*, 379 Ill. App. 3d 162, 175 (2008) ("The law allows a plaintiff to pursue as many causes of action as the facts and good-faith pleading permit."). Thus, so long as a good-faith factual basis exists for a plaintiff's claim of direct negligence against an employer, the plaintiff should be allowed to pursue such a claim in addition to a claim of vicarious liability.

¶ 44 In this case, the evidence at trial established that Green thought Patten employees had improperly positioned the load and asked them to reload it. Patten employees refused. Green then called his supervisor at Pan-Oceanic to voice concerns over the placement of the load. Savinder nonetheless instructed him to return with it. At the close of the evidence, the trial court instructed the jury that plaintiff claimed Pan-Oceanic was negligent for, among other things, ordering Green to take the load on the highway after it knew, or should have known, that it was in an unsafe state and for failing to reject the load to prevent it from traveling on the highway. See IPI Civil No. 50.01, Notes on Use ("If by the pleadings and evidence there is an issue of fact as to the liability of the principal for his own acts independent of acts of the agent, then a separate instruction appropriate to such independent basis of liability should also be used and the last sentence of this instruction should be modified or stricken accordingly."). This theory of liability did not seek to impute Green's misconduct onto Pan-Oceanic. Rather, plaintiff claimed that Pan-Oceanic should be held liable for its own actions and inactions. See *National R.R. Passenger Corp. v. Terracon Consultants, Inc.*, 2014 IL App (5th) 130257, ¶ 15 (observing that when a plaintiff raises "a direct claim of negligence against an employer, such as a claim for negligent hiring, negligent training, or negligent supervision," she " 'must prove that the employer's breach— not simply the employee's malfeasance—was a proximate cause of the plaintiff's

injury' " (quoting *Vancura*, 238 Ill. 2d at 375)); see generally *Doe v. Coe*, 2019 IL 123521, ¶ 33 ("Negligent hiring, negligent supervision, and negligent retention are all direct causes of action against the employer for the employer's misconduct in failing to reasonably hire, supervise, or retain the employee.").

¶ 45 We see no reason why a plaintiff should be precluded from seeking to hold an employer vicariously liable for its employee's negligence, as well as directly liable for its own negligence, separate and apart from its employee's conduct. A potentially meritorious cause of action should not be barred simply because the employer acknowledges vicarious liability for its employee's misconduct in a separate cause of action. See *James*, 661 S.E.2d at 332 (finding it to be "a rather strange proposition that a stipulation as to one cause of action could somehow 'prohibit' completely the pursuit of another").

¶ 46 The justifications for the *McHaffie* rule are policy driven and not well founded. Courts adopting the *McHaffie* rule have expressed concern that, without it, irrelevant and unfairly prejudicial evidence may be admitted. See, *e.g.*, *Gant*, 331 Ill. App. 3d at 929. Yet, we generally rely on the trial court to determine when otherwise relevant evidence should be inadmissible because its probative value is outweighed by the risk of unfair prejudice. See *People v. Adkins*, 239 Ill. 2d 1, 23 (2010). The trial court can limit unduly prejudicial evidence in this context as well. See, *e.g.*, *James*, 661 S.E.2d at 332 ("[T]he argument that the court must entirely preclude a cause of action to protect the jury from considering prejudicial evidence gives impermissibly short-shrift to the trial court's ability to judge the admission of evidence and to protect the integrity of trial, and to the jury's ability to follow the trial court's instructions.").

¶ 47 Courts that have adopted the *McHaffie* rule also argue that it is necessary to prevent the plaintiff from obtaining a double recovery for the same injury. See *Gant*, 331 Ill. App. 3d at 929-30. The *McHaffie* rule, however, offers "a blunt instrument to deal with that potential issue." *Ramon*, 2021 UT 30, ¶ 21, 493 P.3d 613. The trial court can prevent the jury from awarding a double recovery through proper jury instructions (see *Babikian v. Mruz*, 2011 IL App (1st) 102579, ¶ 20) and by use of special interrogatories (see *Marxmiller v. Champaign-Urbana Mass Transit District*, 2017 IL App (4th) 160741, ¶ 21). Indeed, a "court has myriad other tools to address a potential double recovery: it can instruct the jury, provide special

verdict forms, or even remove the doubly-covered portion through post-trial motions." *Ramon*, 2021 UT 30, ¶ 21, 493 P.3d 613. In short, we reject the *McHaffie* rule and instead hold that a plaintiff may proceed with both a direct negligence action against an employer and an action under a theory of vicarious liability.

¶ 48                                   IPI Civil No. 50.01

¶ 49        We also hold the trial court correctly conveyed the applicable law when it struck the last sentence of IPI Civil No. 50.01. As we have just explained, a plaintiff may seek to hold an employer responsible for its own misconduct even if the jury finds that its employee was not negligent. The notes on use for IPI Civil No. 50.01 provide that if

> "there is an issue of fact as to the liability of the principal for his own acts independent of acts of the agent, then a separate instruction appropriate to such independent basis of liability should also be used and the last sentence of this instruction should be modified or stricken accordingly."

Again, at the close of the evidence, the trial court instructed the jury that plaintiff claimed Pan-Oceanic was negligent for, among other things, ordering Green to take the load on the highway after it knew, or should have known, that it was in an unsafe state and for failing to reject the load to prevent it from traveling on the highway. This liability did not depend on Green's actions. Therefore, it was appropriate for the trial court to omit the last sentence of the instruction.

¶ 50                                   Consistent Verdicts

¶ 51        We further hold that the verdicts were not legally inconsistent. This court "will exercise all reasonable presumptions in favor of the *** verdicts, which will not be found legally inconsistent unless absolutely irreconcilable; further, the *** verdicts will not be considered irreconcilably inconsistent if supported by any reasonable hypothesis." *Redmond*, 216 Ill. 2d at 643-44.

¶ 52        The evidence showed that Green saw that the skid steer had not been properly loaded and that he asked for it to be reloaded. When Patten employees refused his request, Green called his supervisor, who ultimately ordered him to return with the

- 14 -

load. Pan-Oceanic's president testified that Green followed the proper protocol before driving with the load. Thus, the jury could have found that Green acted as a reasonably careful person would have under the circumstances.

¶ 53    At the same time, the evidence showed that Savinder did not probe Green for additional information when he called with concerns about the load. Savinder testified that he was multitasking at the time. Savinder acknowledged that he did not understand the scope of the problem; nonetheless, he ordered Green to drive on the expressway with a heavy piece of equipment that his employee had described as crooked. Further, Green testified that no one at Pan-Oceanic had trained him how to respond if a skid steer was not loaded properly. Given this and other evidence, the jury could reasonably have concluded that Pan-Oceanic demonstrated utter indifference toward the safety of others. Thus, the jury's verdicts were not absolutely irreconcilable.

¶ 54                            Missing Jury Instructions

¶ 55    After trial and on appeal, Pan-Oceanic argued that the trial court should have given the jury IPI Civil No. B21.02.02—an instruction on the burden of proof when there is one plaintiff, one defendant, and negligence and willful and wanton counts—as well as IPI Civil No. 20.01.01—an issues instruction when there are negligence and willful and wanton counts. This court has held that a "party forfeits the right to challenge a jury instruction that was given at trial unless it makes a timely and specific objection to the instruction and tenders an alternative, remedial instruction to the trial court." *Mikolajczyk v. Ford Motor Co.*, 231 Ill. 2d 516, 557 (2008); see *Deal v. Byford*, 127 Ill. 2d 192, 203 (1989) (observing that the party challenging a jury instruction must submit an instruction to the trial judge that states the law for which he argues on appeal). "These requirements ensure that the trial court has the opportunity to correct a defective instruction and to prevent the challenging party from gaining an unfair advantage by failing to act when the trial court could remedy the faulty instruction and then obtaining a reversal on appeal." *Mikolajczyk*, 231 Ill. 2d at 557-58.

¶ 56    Here, Pan-Oceanic did not raise timely and specific objections to the absence of a burden of proof instruction or issues instruction during trial, nor did it tender the instructions that it now claims were proper. Therefore, these issues were not

preserved for appeal.

¶ 57                                    Punitive Damages

¶ 58        Pan-Oceanic further contends that the jury's award of punitive damages was unwarranted, and it asks this court to either reduce or strike the punitive damages award in its entirety. In general, punitive damages are meant to punish the wrongdoer and to deter that party, and others, from committing similar acts in the future. *Deal*, 127 Ill. 2d at 203. Such damages may be awarded when, among other things, the defendant acts willfully or with such gross negligence as to indicate a wanton disregard of the rights of others. *Slovinski v. Elliot*, 237 Ill. 2d 51, 58 (2010). To determine whether punitive damages are appropriate, " 'the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant.' " *Id.* (quoting Restatement (Second) of Torts § 908(2) (1979)). A reviewing court will not disturb an award of punitive damages on grounds that the amount is excessive, unless it is apparent that the award is the result of passion, partiality, or corruption. *Deal*, 127 Ill. 2d at 204 (1989); see *Doe v. Parrillo*, 2021 IL 126577, ¶ 38 (confirming that a jury's assessment of punitive damages will be reversed only when the manifest weight of the evidence shows that its assessment was so excessive as to demonstrate passion, partiality, or corruption on the jury's part).

¶ 59        As we noted above, the evidence showed that, although Green called Savinder to express concerns about how the skid steer—a machine that weighs several thousand pounds—was loaded onto the trailer, Savinder ordered him to bring it back to Pan-Oceanic. Savinder told him to return with the load, despite a lack of understanding as to the scope of the problem and despite the fact that it was rush hour and, thus, traffic was likely to be heavy on the expressway. According to Green, the skid steer and trailer were bouncing along the highway before he struck plaintiff's vehicle. Although plaintiff's injuries apparently were not life-threatening, the jury could properly have found that Pan-Oceanic's failure to reject the load was so grossly negligent that it amounted to a wanton disregard for the rights of others on the highway. Further, Gulzar testified that the company earned more than $2 million per year in the three years before trial. Given these factors,

the manifest weight of the evidence does not suggest that the jury's award of $1 million in punitive damages was excessive.

¶ 60    In sum, we hold that (1) an employer's acknowledgment of vicarious liability for its employee's conduct does not bar a plaintiff from raising a direct negligence claim against the employer, (2) the jury's verdicts in this case were not legally inconsistent, (3) the trial court accurately conveyed the applicable law to the jury when it omitted the last sentence of IPI Civil No. 50.01, (4) Pan-Oceanic forfeited its challenges to certain jury instructions, and (5) the manifest weight of the evidence does not suggest that the punitive damages award was excessive.

¶ 61                                    CONCLUSION

¶ 62    For these reasons, we reverse the appellate court's judgment.

¶ 63    Appellate court judgment reversed.

¶ 64    Circuit court judgment affirmed.